In the Matter of Estate of Elmer E. Adams, Deceased, and In the Matter of Heirship of Etta S. Adams, Deceased, Minnie Pflum and Goldie Moline, Appellants, v. Forrest A. Janes, as Administrator of Estate of Etta S. Adams, Deceased et al., Appellees.

Gen. No. 10,621.

Opinion filed September 30, 1952.
Released for publication October 17, 1952.

WILSON, WILSON & RAINEY, of Princeton, for appellants.

L. D. SPAULDING, JR., of Princeton, for appellees.

Mr. Justice Anderson delivered the opinion of the court.

Elmer E. Adams and Etta S. Adams, husband and wife, died intestate on March 4, 1951. On this date they resided in a two-story frame house in the Village of Wyanet, Bureau County, Illinois. They owned this real estate as joint tenants and both died as a result of a fire which partially consumed their home on the above date. They had no children or descendants of children as a result of their marriage but had other heirs at law. Proceedings were instituted in the county court of Bureau county to determine their respective heirs at law. To decide this question it was necessary there, as here, to determine whether Elmer E. Adams or Etta S. Adams died first or whether they died simultaneously. The Illinois Revised Statute, 1951, chap. 3, par. 192.1 [Jones Ill. Stats. Ann. 110.289 (1)], provides ''where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this Article.'' The county court found that there was not sufficient evidence that Elmer E. Adams and Etta S. Adams died otherwise than simultaneously. The two proceedings, consolidated by agreement of counsel, were appealed to the circuit court and after a trial *de novo* the circuit court affirmed the orders of the county court. By stipulation of counsel the two causes are consolidated here. Appellants, the heirs at law of Elmer E. Adams, deceased, have appealed.

Appellants contend that Etta S. Adams died prior to Elmer E. Adams and not simultaneously and that the order of the circuit court finding that there was not sufficient evidence to show that they died other-

117

wise than simultaneously is contrary to the manifest weight of the evidence.

The undisputed evidence disclosed by the abstract of the record shows that the house where the fire occurred was heated by an oil-burning, hot-air furnace situated in the basement. The fire apparently started in the basement and came up the basement stairway as indicated by some charred wood in the basement, on the stairway, and near the top of the stairway. It is also undisputed that Elmer E. Adams at the time of his death was 79 years old and walked with a cane; that he did the housework, the cooking, performed the outside chores, and cared for his bedridden wife; that he was not suffering from any physical or mental disabilities. It is also undisputed that Etta S. Adams was 85 years old; that she had been bedridden as a result of a hip fracture that had occurred the preceding December; that a fairly good union of the fracture had been obtained and she could move herself about the bed and pull herself up into a semi-sitting position but could not stand or walk; that she had no other mental or physical disability. There is no evidence to indicate when Etta S. Adams was last seen alive prior to the fire. About 12:15 p. m. on the day of the fire Elmer Adams was seen feeding his chickens in the back yard of his home. About 1:00 p. m. on the same day the fire department was called, a neighbor having observed an unusual quantity of smoke coming from the Adams' house. Within a half hour the fire department arrived. The body of Mrs. Adams was removed from off her bed through a bedroom window. The bedroom was filled with smoke. The body was immediately examined by Dr. Elmer Schnicke, a witness, who testified on behalf of appellants that when he examined Mrs. Adams she was dead; that no oxygen equipment was used to attempt to revive her but it was applied to Mr. Adams without avail. Dr. Schnicke

118

further testified that when Mr. Adams was brought up from the basement he was laid on the front lawn; that he found no pulse or heart murmur; that from his examination of the two people he could not ascertain the time of their deaths but that they were both dead at the time he examined them.

Several witnesses testified that sometime between fifteen and thirty minutes after Mrs. Adams was found, Elmer Adams was found in the basement in the southeast corner of a laundry room adjoining the furnace room. There is an outside entrance on the north wall of this laundry room and the doorway to the furnace room was located on the west wall of the laundry room. Adams was on his knees with his head on or near a narrow concrete ledge located approximately ten inches from the floor.

Henry Hamrick testified that between twenty and thirty minutes elapsed from the time that Mrs. Adams was taken out of the bedroom window until two other men brought out the body of Elmer Adams from the basement; that as they carried him they noticed that he had some color in his face; that his body was rather limp and that Hamrick then formed an opinion that he was alive. On cross-examination Hamrick testified that he saw no movement of Adams' body as he was being carried out and he would not positively swear whether he was alive or dead at that time.

Lewis Vaughn testified that he was the first person to reach Elmer Adams; that there was some color in his face; that he heard a noise from Mr. Adams' mouth as he was being carried out; that he formed the opinion that Mr. Adams was alive when he found him. On cross-examination he testified that he saw no evidence of life; that he did not feel for his heart beat nor did he take his pulse; that he did not notice any breathing but that he "had kind of a feeling that Mr. Adams might have been alive."

Vincent Oldes testified that he helped carry Mr. Adams out of the basement; that when he reached him in the basement he did not take his pulse or feel his heart or observe whether or not he was breathing, and that he saw no evidence of life.

Dr. Jerry J. Kerns as an expert witness testified on behalf of the appellants in answer to hypothetical questions. He testified that he was a physician and surgeon specializing in pathology. His qualifications were not questioned. He testified that in his opinion both Mr. and Mrs. Adams died as a result of suffocation and that in his opinion Mrs. Adams died first. This opinion was largely based upon the fact that she was older than her husband and was an invalid; and the belief that Mr. Adams' constitution and endurance were greater than hers, and that rigor mortis had set in on Mrs. Adams' body, prior to the finding of her husband's body.

Dr. Hugh Wilson as an expert witness testified on behalf of the appellees in answer to hypothetical questions. He testified that he was a pathologist. His qualifications were not controverted. He testified that in his opinion the husband predeceased his wife. He based his opinion on the assumption that since the fire started in the basement there was more carbon monoxide gas there than in the bedroom. This would cause suffocation sooner and therefore in his opinion if Mr. Adams died of suffocation, it occurred prior to the death of his wife. He further testified that as the fire started in the basement there would have been more smoke in the basement than in the other part of the house; therefore less oxygen in the basement and hence the husband's suffocation causing death would have occurred first.

Other witnesses on behalf of the parties testified to other facts largely uncontroverted.

The foregoing is the substance of the pertinent testimony. The principal issue before this court is whether or not, giving due consideration to all the testimony appearing in the record, the judgments of the trial court were against the manifest weight of the evidence. In *Prudential Ins. Co. v. Spain,* 339 Ill. App. 476, the Appellate Court of the Fourth District correctly held that the words "sufficient evidence" as used in the above mentioned statute required the same degree of proof as any other civil proceedings; therefore the appellants in the instant case were required to prove that the deaths of Mr. and Mrs. Adams occurred otherwise than simultaneously. These cases were tried by the court without a jury. The testimony was to some extent contradictory. When testimony is contradictory this court will not substitute its judgment as to the credibility of witnesses for that of the trial court, which saw and heard them, unless its findings are manifestly against the weight of the evidence. (*Wynekoop v. Wynekoop,* 407 Ill. 219; *Prudential Ins. Co. v. Spain,* 339 Ill. App. 476.) From an examination of the entire record we are convinced that the trial court was correct in finding that there was not sufficient evidence that Elmer E. Adams and Etta S. Adams died otherwise than simultaneously. Much of the testimony as to the times of deaths of the decedents was speculative and conjectural. We cannot say that the orders appealed from are against the manifest weight of the evidence.

Appellants further urge that the circuit court committed reversible error in granting appellees' oral motion for a continuance after the commencement of the trial. The abstract of the record discloses that during the progress of the trial and prior to the closing of appellants' case, appellants' counsel asked for a few minutes continuance to wait for the arrival of a wit-

ness. Appellees' counsel then also asked for a continuance, stating: "I want to get me an expert, too." After considerable colloquy between the court and counsel for the parties and over the objection of appellants, the court continued the case for a week.

██ The granting of continuance, except where it is based on a statutory cause, rests in the sound judicial discretion of the court. The court's action will not be set aside unless there has been an abuse of that discretion. (*Benton v. Marr*, 364 Ill. 628; *Bellomy v. Bruce*, 303 Ill. App. 349.) There is no showing in the record in the instant case that the appellants' case was prejudiced by reason of the continuance. The trial court did not abuse its sound judicial discretion in granting the continuance. This assignment of error is without merit. We find no error in this record requiring a reversal of the case and the judgments of the trial court are affirmed.

*Judgments affirmed.*