ROBERT L. DeYOUNG, Plaintiff-Appellee, v. KAREN A. DeYOUNG, a/k/a Karen A. Pieper, Defendant-Appellant.

Third District  No. 78-46

Opinion filed August 7, 1978.

David L. Cover, of Peoria, for appellant.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant Karen DeYoung (Pieper) appeals from a decree of the Circuit Court of Peoria County wherein her petition to modify a child custody order was denied and plaintiff Robert DeYoung's counterpetition for child support was granted.

After five years of marriage the parties were divorced in 1968, and defendant, who was then living in Ohio, was awarded custody of the couple's two daughters while plaintiff was given a right to summer visitation. The divorce decree also ordered plaintiff to pay $20 per week child support while the girls were with defendant. In 1969 by mutual agreement of the parties, custody was changed to plaintiff with summer visits to defendant. Transportation expenses were to be paid by defendant, and plaintiff's child support obligation was vacated.

In September of 1977 defendant filed a petition to modify the custody order by returning custody to her. Plaintiff also filed a petition to modify, asking that defendant's summer visitation be shortened and that defendant be required to pay child support. Both petitions were heard on

October 10, 1977. Defendant was the first witness, and she introduced into evidence a letter from plaintiff dated August 20, 1977, in which he stated that he was recently divorced from his second wife, that he was living in an apartment in Chillicothe, that the girls were "trying to decide who to stay with and go to school at," that if they stay with their stepmother he would get them every Tuesday and Thursday plus every other weekend, and that he would like to have the girls for the month of August each year. On cross-examination defendant testified that she had been married three times, that she has a stable marriage now to a Cleveland, Ohio, police officer, that she works fulltime for an investment and development company, that she has net earnings of $1,000 per month including overtime, and that she supports the children when they are with her.

The trial judge then interviewed each girl separately in his chambers. The oldest girl is 13, and the youngest is 11. Counsel for the two parties were present, but a court reporter was not. According to the certified report of proceedings, which was prepared under Supreme Court Rule 323(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 323(c)), both attorneys and the trial judge were unaware that the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 et seq., effective October 1, 1977) applied to these interviews and required the presence of a court reporter.

After the interviews, the hearing proceeded with plaintiff testifying that he was employed by Pabst Brewing Company where he had worked for 15 years, that his net pay was $202 per week, and that his living expenses were "normal."

On October 31, 1977, the court entered an order denying defendant's petition to change custody and granting plaintiff's petition for support. Defendant was ordered to pay $52 per week child support except that when the children are with her, payment would be reduced to $26 per week. The order also provided that defendant's summer visitation would end 14 days before school starts and that she would be entitled to one week visitation during Christmas vacation.

Defendant filed a motion for new trial and, in the alternative, for reconsideration of evidence. In the verified motion defendant stated that both children told her they had lied to the judge by denying that they were living with their stepmother in a trailer where they shared one bunkbed with two other children and that the failure to have a court reporter present during the interviews in chambers, as required by law, prevented defendant from offering rebuttal evidence. The trial court denied defendant's motion and this appeal followed.

Our primary concern in this case is with section 604 of the new Illinois Marriage and Dissolution of Marriage Act, which provides in part:

"(a) The court may interview the child in chambers to ascertain

the child's wishes as to his custodian and as to visitation. Counsel shall be present at the interview unless otherwise agreed upon by the parties. The court shall cause a court reporter to be present who shall make a complete record of the interview instantaneously to be part of the record in the case." Ill. Rev. Stat. 1977, ch. 40, par. 604.

Defendant contends that the requirement for a court reporter to be present during the interview is mandatory and that she was prejudiced by the absence of a written transcript since she had no opportunity to explain or rebut the children's statements. Plaintiff insists that, by failing to object, both parties waived their right to have a court reporter present, and that any error was harmless since defendant failed to prove a material change of circumstances such as would justify a change in custody.

Before the enactment of the 1977 statute, Illinois courts had recognized the problems confronting the trial judge in a custody dispute. The child's preference was then, as now, one of the factors to be considered by the court. (See *Finn v. Finn* (2d Dist. 1973), 11 Ill. App. 3d 385, 297 N.E.2d 1; *Swanson v. Swanson* (3d Dist. 1971), 1 Ill. App. 3d 753, 274 N.E.2d 465; and Ill. Rev. Stat. 1977, ch. 40, par. 602.) In *Oakes v. Oakes* (1st Dist. 1964), 45 Ill. App. 2d 387, 393, 195 N.E.2d 840, 99 A.L.R. 2d 949, the court said:

"The acrimonious atmosphere in which a child is required to state in open court his preference as to custody is well known. Often the primary concern, the welfare of the child, is lost in the violent charges and countercharges of the contesting parties. This atmosphere is heightened when the contesting parties or relatives are present in the courtroom.

To have a child face such an array of belligerence and state on which side his preference lies is inhuman and, for judicial purposes, useless. Hatred and revenge as a rule possess the contesting parties."

The use of *in camera* interviews in custody cases was considered by this court in *In re Ross* (3d Dist. 1975), 29 Ill. App. 3d 157, 170-71, 329 N.D.2d 333, 343, where we observed:

"As indicated in the *Oakes* case, an order will not be reversed because of such procedure occurring, unless it appears that some prejudice may have occurred. Such off the record interviews should be for limited purposes only and used sparingly, if possible, for the chances of abuse may not be ignored. As noted in *Oakes* also, the court, on motion of one of the parties, should reveal the substantive portions of the interview." (See also *Stickler v. Stickler* (1st Dist. 1965), 57 Ill. App. 2d 286, 206 N.E.2d 720.)

Section 604 of the Illinois Marriage and Dissolution of Marriage Act

authorizes the trial court to interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation. Thus the court can elicit the child's preferences in circumstances free from the pressures and acrimony that might prevail in open court. At the same time section 604 guards the right to appeal by providing for a record of the interview since a custody decree can be reviewed only on the basis of the record. (*In re Ross; Henrikson v. Henrikson* (3d Dist. 1975), 26 Ill. App. 3d 37, 324 N.E.2d 473.) In this manner the legislature has attempted to balance the competing interests in these difficult cases.

■■■ Looking solely at the language of section 604(a), the first sentence states that the trial judge "may interview the child in chambers." The use of "may" clearly indicates that the choice of conducting an interview is a matter within the trial court's discretion. The second sentence says that counsel "shall be present unless otherwise agreed upon by the parties," thus expressly allowing the parties to waive the right to have counsel present. The third sentence states that the "court shall cause a court reporter to be present." This provision does not authorize a waiver by the parties, and we believe the imperative "shall" mandates that a record be made of the interview. We are aware that "shall" has upon occasion been construed to mean "may" in order to fit a particular context (*e.g., In re Armour* (1974), 59 Ill. 2d 102, 319 N.E.2d 496), but generally, courts hold that "shall" is mandatory, particularly when addressed to a public official. (*People v. Nicholls* (5th Dist. 1977), 45 Ill. App. 3d 312, 359 N.E.2d 1095.) An identical provision in Missouri's Dissolution of Marriage Code was held to be mandatory in *Duncan v. Duncan* (Mo. App. 1975), 528 S.W.2d 806.

While we believe the requirement that a record be made of the interview is mandatory and cannot be waived by the parties, we note that, in any event, no waiver occurred here. The new statute, which made broad changes in Illinois marital law, took effect 10 days before this hearing, and its text was not yet readily available. The new law clearly applied here because section 801 provided, "Evidence adduced after the effective date of this Act shall be in compliance with this Act." (Ill. Rev. Stat. 1977, ch. 40, par. 801(b).) According to the report of proceedings, neither the judge nor counsel were aware that section 604 applied to this case, a situation beyond their control, and thus the parties could not have waived a requirement of which they had no knowledge.

■■ We are particularly concerned in this case because defendant has asserted under oath in her motion for a new trial that both girls told her they lied to the judge when they denied living with their stepmother. Plaintiff's letter of August 20, 1977, which was in evidence, raises a question as to where the girls have been staying, but the record is not clear on that point. The absence of a transcript of the interviews is clearly

prejudicial to defendant, and provides no means of determining whether the trial court's decision was correct.

■■ Similarly, the portion of the decree ordering defendant to pay child support is not supported by evidence in the record. Section 510(a) of the new Act codifies previous case law by requiring a showing of a substantial change in circumstances before a support order can be modified. Here the meager evidence relating to financial resources, needs, standard of living of the parties, and other relevant factors did not satisfy the requirements of section 505 of the Act. For example, no one offered any meaningful evidence as to living expenses of either plaintiff or defendant or the support needs of the two girls.

The law requires that competing custody and support claims be resolved in accordance with best interest of the child, and places upon the court the burden of determining where that interest resides. With that in mind, we conclude the decree of the circuit court must be reversed and remanded for further proceedings not inconsistent with this opinion and in compliance with the new Act.

Reversed and remanded.

STOUDER and SCOTT, JJ., concur.