FREEMAN MONTGOMERY, Plaintiff-Appellee, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant-Appellee.—(ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Defendant-Appellant.)

Fifth District    No. 78-297

Opinion filed June 12, 1979.

Walker and Williams, P. C., of Belleville (James C. Cook, of counsel), for appellant.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard E. Boyle, of counsel), for appellee Terminal Railroad Association of St. Louis.

Edward J. Kionka, of Columbia, and Chapman, Chapman and Carlson, of Granite City (Edward J. Kionka, of counsel), for appellee Freeman Montgomery.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant St. Louis-San Francisco Railway Company (Frisco) appeals from a judgment of $240,000 entered against it in favor of the plaintiff Freeman Montgomery.

On May 20, 1974, Montgomery worked for the Terminal Railroad Association of St. Louis (Terminal) as a member of a four-man crew. During the early morning hours of May 20, Montgomery's crew was assigned to set up a Frisco train on track 84 of the Terminal's 23d Street yard.

The Terminal's 23d Street yard is adjacent to a yard owned by the Frisco. Certain tracks descend out of the Frisco area of the yard and join with tracks running through the area used by the Terminal. These Frisco tracks are numbered from 85 through 91, and they all converge into one track which links with track 84.

Montgomery coupled his engine with some cars on track 84, and stopped the engine at the switch point for tracks 84 and 85 in order to pump air into the cars. The engine was positioned so that it blocked the switch point. Montgomery testified that his train filled all of the available track. The engine had to remain stationary during the air pumping operation.

During this time the signal on track 85 would have been red. Track 85 was being used as a switching track, and every boxcar on the track was supposed to have its brakes set.

While Montgomery waited for the completion of the air pumping procedure, the crew's hindman, who was standing on the right side of the train, began signalling wildly with his lantern. As Montgomery watched the hindman, the engine was struck on the left by a runaway boxcar coming down track 85. Montgomery was thrown to the floor of the engine and the engine was partially derailed. Subsequent inspection of the boxcar revealed that its brakes had not been set.

The boxcar belonged to the Frisco and was in its possession at the time of the collision.

Montgomery suffered a back injury in the accident, and testified that

he was subsequently unable to work. He was treated at the Missouri Pacific Hospital, and was also examined by Dr. Heidke and Dr. Fox. His disability insurer sent him to see Dr. Vilray Blair in May of 1974, and Dr. Mishkin in the spring of 1977. Montgomery was also regularly treated for his injury by a chiropractor. Surgery was recommended, but Montgomery refused surgical treatment on religious grounds.

Montgomery brought this action against both the Terminal and the Frisco for personal injuries suffered in the collision. At the close of Montgomery's evidence, the trial court directed a verdict in favor of the Terminal. At the close of all the evidence, the court directed a verdict in favor of Montgomery and against Frisco on the question of liability. The jury subsequently returned a verdict for $240,000 in favor of Montgomery and against Frisco. Frisco appeals.

■■ Frisco first contends that the trial court erred in giving the jury a supplemental damage instruction. After the instruction had been read to the jury, the trial judge called both counsel into chambers. The judge told counsel that a significant element of damages had been inadvertently omitted from the instructions, and asked for suggestions on how to correct the error. The judge read the corrected damage instruction to the jury over Frisco's objection, and gave the jury a printed copy of the instruction to use during deliberations. Frisco asserts that reading this instruction alone put undue emphasis on the damage issue, thus depriving Frisco of a fair trial. It cites *Manninger v. Chicago & Northwest Transportation Co.* (1978), 64 Ill. App. 3d 719, 381 N.E.2d 383, in support of this argument. We believe that *Manninger* must be distinguished on its facts. In that case, the court called attention to plaintiff's amended prayer for relief. The principal objection to the court's conduct was that the revision of the original instruction was not in writing, and was conducive to juror misinterpretation. This is not the case here. The court handled a very difficult situation in a fair and sensible manner, and we hold that Frisco's interests were in no way prejudiced.

Frisco next contends that the trial court erred in directing a verdict in favor of Montgomery and against Frisco on the issue of liability, where there was some evidence tending to show contributory negligence on Montgomery's part. The alleged contributory negligence was in stopping the engine so that it blocked the switching point.

The rule controlling directed verdicts was stated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. In that case, our supreme court held that a verdict may be directed only in those cases in which the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could stand. The court specifically rejected the proposition that a verdict could not be directed if there was any evidence to support the opponent's

position. What constitutes evidence adequate to withstand a motion for directed verdict will differ from case to case, depending on the weight of the evidence presented by the movant. *Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 313 N.E.2d 631.

■■ Frisco's assertion that the question of Montgomery's contributory negligence should have been decided by the jury is not supported by the record. The uncontroverted evidence was that Montgomery stopped his engine on the only available length of track in order to perform a necessary mechanical procedure. While his engine blocked a switch point, the intersection was equipped with traffic control lights which would have informed oncoming trains that the intersection was not passable. Under these facts, we hold that Montgomery was not contributorily negligent as a matter of law, and that the trial court properly directed a verdict in his favor.

On the day of trial, Frisco's counsel filed a verified motion for continuance. The motion alleged that Frisco had discovered only two weeks before that Montgomery had received a back injury similar to the one complained of in this case approximately 9½ years before the accident, and that a continuance was necessary in order to present evidence of this pre-existing injury at trial. The motion was denied. Frisco contends that the trial court abused its discretion in denying the continuance. We disagree.

Illinois Supreme Court Rule 231(f) (Ill. Rev. Stat. 1977, ch. 110A, par. 231(f)) states:

> "No motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay."

■■ A litigant has no absolute right to have a case continued; it is a matter within the discretion of the trial court, and the court's decision will be disturbed on review only in instances where denial of the continuance results in a palpable injustice to the movant. Specially grave reasons for continuance are required if it is requested after the case has reached the trial stage. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) Here, Frisco sought the continuance after the case had reached the trial docket in order to obtain evidence of questionable relevance.[1] We hold that the trial court did not abuse its discretion in denying the motion.

■■ Similarly, Frisco asserts that the trial court erred in denying it a recess in order to depose a witness. The evidence was sought for the purpose of impeaching Montgomery on a matter which was only tangentially related

---

[1] In Illinois, a tortfeasor takes his victims as he finds them, and a pre-existing weakness of the victim is irrelevant, where the injury resulting from the tort caused the disability. (*Pozzie v. Mike Smith, Inc.* (1975), 33 Ill. App. 3d 343, 337 N.E.2d 450.) Frisco does not assert, nor does the record show, that Montgomery was in any way disabled by the previous injury at the time of the collision.

to the issues in the case. The trial court denied the recess. We hold that it acted properly in doing so.

■■ Frisco next contends that it was denied a fair trial by the inflammatory and prejudicial nature of the closing argument made by Montgomery's counsel. We note that as to most of the argument complained of, the trial court sustained Frisco's objections and properly admonished the jury. This is presumed to have cured any harm. (*Hahn v. Norfolk and Western Ry.* (1978), 59 Ill. App. 3d 904, 375 N.E.2d 914.) We have reviewed the record, and we find no error in the closing arguments which requires reversal.

The trial court heard Montgomery's *in camera* testimony that surgery had been recommended to improve his condition, and that he rejected surgical treatment on religious grounds. The court refused to admit any evidence regarding the surgery or Montgomery's reasons for refusing it and declined to give a jury instruction on the subject. Frisco contends that this was error. We disagree.

■■ It is clear that an injured person has no duty to undergo surgery to mitigate his damages. (*Rosenstein v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 1089, 299 N.E.2d 396; *Howard v. Gulf, Mobile & Ohio R.R. Co.* (1957), 13 Ill. App. 2d 482, 142 N.E.2d 825.) Furthermore, as stated in the comment to Illinois Pattern Jury Instructions, Civil, No. 33.01 (2d ed. 1971):

> "No instruction should be given with reference to plaintiff's duty to submit to major surgical operations. Whether the plaintiff is to undergo a serious operation is a matter for him to decide. [Citations.]"

The trial court acted properly in this matter.

Frisco further contends that the verdict was excessive and palpably contrary to the evidence. The rule in Illinois is that a jury verdict will not be disturbed unless it is so excessive as to raise the presumption that the jury acted from passion or prejudice. (*Carlson v. Dorsey Trailers, Inc.* (1977), 50 Ill. App. 3d 748, 365 N.E.2d 1065; *Wood v. Mobil Chemical Co.* (1977), 50 Ill. App. 3d 465, 365 N.E.2d 1087; *Lawson v. Belt Ry. Co.* (1975), 34 Ill. App. 3d 7, 339 N.E.2d 381.) Our review of the record convinces us that the verdict in this case must be sustained.

■■ Frisco further contends that it was prejudiced by the trial court's directing a verdict in favor of the Terminal. The only party who may appeal from a judgment entered on a directed verdict in favor of a co-defendant is the plaintiff. (*Schachtrup v. Hensel* (1938), 295 Ill. App. 303.) Since Montgomery has not appealed, we will not consider the propriety of the judgment for the Terminal in this action.

We have reviewed Frisco's argument that it was denied a fair trial as the result of the cumulative effect of alleged errors; in light of our

foregoing discussion of those alleged errors, we find this argument to be without merit.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KUNCE and KASSERMAN, JJ., concur.