DAVID W. MANN, Petitioner-Appellant, *v.* THE PEOPLE OF THE STATE OF ILLINOIS *et al.*, Respondents-Appellees.

Fourth District   No. 16809

Opinion filed July 28, 1981.

Douglas A. Muck, of Woods, Bates and Dehner, of Lincoln, for appellant.

Robert J. Barry, State's Attorney, of Lincoln, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:
*Habeas corpus.*
Trial court denied.
We affirm.

David Mann was arrested in Logan County pursuant to a governor's extradition warrant which stated that he had been charged in Milwaukee, Wisconsin, with two counts of theft. It was alleged that one of these thefts was committed on May 5, 1979, and the other on June 13 or June 20, 1979. Mann filed a *habeas corpus* petition, the trial court denied it, and he now appeals.

The parties' first court appearance regarding the petition occurred September 30, 1980, whereupon they agreed to a continuance until October 14 so that the State could file a response to the petition and prepare its case. On October 14, however, the State had not filed its answer, and the petitioner moved for entry of a default judgment.

The State's Attorney, appearing for the State, said that Assistant State's Attorney Roosevelt was in charge of the case and that an answer had been drafted which would be ready for filing soon. He also stated that Roosevelt and an assistant state's attorney in Wisconsin had tried but failed to get into contact with each other. He pointed out that petitioner was apparently going to present alibi witnesses and that it was necessary to discuss with Wisconsin officials the possibility of getting rebuttal witnesses.

In support of his motion for default, petitioner's attorney pointed out that petitioner and his three witnesses had come from Chicago to Lincoln that day and that he had gotten no message from the State that it would seek a continuance. Following counsel's arguments, the court allowed a 30-minute recess to permit the State to get its answer on file. The court then heard testimony from petitioner and his three witnesses.

### TESTIMONY

Betty Granger, an employee of Trans World Airlines, testified that from May 3 to May 7, she and petitioner were together in California. On May 5 they did a lot of sightseeing and drove between San Francisco and Los Angeles. Granger, however, had no documents to prove that she and petitioner were together in California on those dates. She testified that they had flown there as nonpaying passengers on a TWA flight and that she had listed David Mann, the petitioner, as her husband in order to get free passage for him. According to Granger, TWA does not keep records of the names of nonpaying passengers.

In addition, Granger rented a car in California in her name because her TWA employment gave a discount, and she registered at hotels as "Mr. and Mrs. Granger" for the same reason. Granger had known petitioner for 10 years and had first become intimate with him around the time of their California trip. She also testified that petitioner had helped her move to a new apartment following their return to Chicago. However, none of his activities in this regard occurred on the dates of the alleged thefts.

Petitioner's mother, Louise Williams, stated that on June 13 and 20, 1979, petitioner was involved in a drug rehabilitation program at a center in Chicago. The clinic where petitioner received treatment was located near his mother's place of employment, and he always stopped in to see her when he went to the center. She did not, however, testify specifically that she saw him at any time on June 13 or June 20.

Russell Clark, a close friend for 30 years of both petitioner and his mother, testified that on June 20 petitioner had gone with him to Indiana Harbor, Indiana, to repair Clark's car, which Clark had left there the previous day. The witness' testimony reveals that he and petitioner were together from approximately noon until 3 p.m. Clark also testified that for several years he had been employed by the Chicago White Sox and that he had driven the team's truck between Chicago and Milwaukee a number of times. He said that the trip took him 2½ hours but conceded that he had never driven between the cities by car.

Testifying in his own defense, petitioner said that he had been in California with Granger on May 5 and that he had not been in Milwaukee for 20 years. He also testified that he had been at his drug rehabilitation center for approximately an hour between the times of 11 a.m. and 2 p.m. on the dates of June 11 through 15, June 18 and 19, and June 22 through 24. He echoed Clark's testimony concerning their trip to Indiana Harbor on June 20 to repair Clark's car.

The State produced no evidence at the October 14 hearing, and the case was continued to October 16 for arguments. On that date—over petitioner's objection—the court granted the State a continuance until October 28, when Mr. Teeter testified for the State. (His testimony is not contained in the record on appeal.)

After the October 28 hearing, the court stated that petitioner's witnesses were all close to him and therefore their credibility was questionable. The judge noted that he had given little credence to Granger's testimony, finding her not believable. Petitioner's mother's testimony, said the judge, was of no help. Similar comments were made as to Clark. Also, the court observed that petitioner had produced no documentation of his whereabouts on the relevant dates. In addition, the judge said, "The Court, at the conclusion of that hearing [October 14],

would have and could have properly found that the *prima facie* status caused by the warrant itself was not overcome by the evidence presented by the Defendant." He then proceeded to state that Teeter's testimony was convincing concerning identification of petitioner. He therefore denied the *habeas corpus* petition.

### MOTION FOR CONTINUANCE

On appeal, petitioner contends that the trial court erred in granting the State a continuance, following his presentation of evidence, for the purpose of getting rebuttal witnesses from Wisconsin. Supreme Court Rule 231(a) (73 Ill. 2d R. 231(a)) governs the subject of continuances sought because of the absence of material evidence:

> "If either party applies for a continuance of a cause on account of the absence of material evidence, the motion shall be supported by the affidavit of the party so applying or his authorized agent. The affidavit shall show (1) that due diligence has been used to obtain the evidence, or the want of time to obtain it; (2) of what particular fact or facts the evidence consists; (3) if the evidence consists of the testimony of a witness, his place of residence, or if his place of residence is not known, that due diligence has been used to ascertain it; and (4) that if further time is given, the evidence can be procured."

The State did not file an affidavit to support its motion for a continuance. Petitioner concedes that a motion for a continuance is usually a matter within the trial court's discretion (*Waltz v. Schlattman* (1980), 81 Ill. App. 3d 971, 401 N.E.2d 994), but argues that Rule 231(a) removes any discretion to grant the motion if the movant fails to present an affidavit. The State contends that the court had discretion to grant the motion even though no affidavit was filed.

A number of cases have held that if a motion for a continuance, on account of the absence of material evidence, is not accompanied by an affidavit, the trial court's denial of the motion cannot be regarded as an abuse of its discretion. (*Feder v. Hiera* (1980), 85 Ill. App. 3d 1001, 407 N.E.2d 799; *Atlee Electric Co. v. Johnson Construction Co.* (1973), 14 Ill. App. 3d 716, 303 N.E.2d 192; *Parker v. Newman* (1973), 10 Ill. App. 3d 1019, 295 N.E.2d 503.) These cases, however, did not have to rule upon the question whether a judge in fact has discretion to *grant* such a motion absent the filing of an affidavit. We therefore have before us a case of first impression.

■■ A motion for a continuance in order to obtain material evidence will ordinarily be filed fairly close to trial date. Quite often the party opposing the motion will have completed much of his trial preparation, and his witnesses probably will have made arrangements to be in court on that

date. The opposing party, as well as the court, is thus entitled to know the facts that Rule 231(a) requires in a movant's affidavit. The drafters of Rule 231(a) apparently saw a sworn statement as the best means of assuring that a motion for a continuance because of the absence of material evidence is not being filed for some improper purpose. Thus, to assure that an affidavit would be accompanying such a motion, it was provided that "the motion *shall* be supported by * * * affidavit * * *." (Emphasis added.) Use of the word *shall* usually denotes that a particular action is mandatory. (*DeYoung v. DeYoung* (1978), 62 Ill. App. 3d 837, 379 N.E.2d 396.) We therefore conclude that the trial court erred in granting the motion for a continuance when the State had not filed a supporting affidavit.

We also note that once a case has reached the trial stage, a motion for a continuance should be granted only for particularly grave reasons. (*Montgomery v. Terminal R.R. Association* (1979), 73 Ill. App. 3d 650, 392 N.E.2d 77; Supreme Court Rule 231(f) (73 Ill. 2d R. 231(f)).) This is especially true when, as here, a party seeks a continuance after the other party has produced all of its evidence. But given our decision that the judge lacked the discretion to grant this motion without an affidavit on file, we need not consider whether the State orally presented adequate reasons for granting a continuance.

### HARMLESS ERROR

■■ The trial court's error, however, was obviously harmless. The governor's extradition warrant constituted a *prima facie* case that petitioner was a fugitive from justice. (*People ex rel. O'Mara v. Ogilvie* (1966), 35 Ill. 2d 287, 220 N.E.2d 172.) With the warrant in evidence, it became petitioner's burden to rebut the *prima facie* case with evidence which conclusively demonstrated that he was not in Wisconsin on May 5, June 13, or June 20. (*People ex rel. Douglas v. Woods* (1968), 39 Ill. 2d 381, 235 N.E.2d 601.) The trial judge, whose duty it was to determine the credibility of the witnesses (*People ex rel. Terry v. Elrod* (1978), 63 Ill. App. 3d 74, 379 N.E.2d 823), concluded that petitioner, his mother, and his friends were not believable. The judge was not compelled to believe their testimony.

■■ Petitioner was entitled to be discharged only if he "so conclusively proved that no question can be made that [he] was not within the demanding State when the crime is said to have been committed * * *." (*People ex rel. Webb v. Babb* (1954), 5 Ill. 2d 35, 41, 123 N.E.2d 822, 825.) Given the witnesses' close relationship with petitioner, the lack of any documentation of his presence on the relevant dates, and the absence of any specific evidence of petitioner's whereabouts for most of June 13, petitioner did not meet his burden of proof. The trial judge would have been justified in denying the *habeas corpus* petition on October 14—as he

said on the record that he would have done—even without evidence from the State. Only if petitioner's witnesses' credibility had not been called into question would the trial judge have been compelled to say that their testimony rebutted the *prima facie* case established by the warrant. (*Nelson v. People* (1973), 11 Ill. App. 3d 1092, 297 N.E.2d 172.) Thus, the error in continuing the case until October 28, when the petition was finally denied, was harmless.

Affirmed.

WEBBER and GREEN, JJ., concur.