PATSY JACK, Plaintiff-Appellant, v. FAUSTINO V. PUGEDA, Defendant-Appellee.

Fifth District   No. 5—87—0551

Opinion filed June 7, 1989.

Harold B. Culley, Jr., of Raleigh, for appellant.

William Kent Brandon, of Mitchell, Brandon & Schmidt, of Carbondale, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

The questions before this court are relatively simple ones:

Did the trial court err in refusing the plaintiffs' motion for continuance and did it err in denying the plaintiffs' post-trial motion based upon its refusal to allow the continuance?

While the questions are simple, their resolution requires this court to balance the supreme court's interests in the prompt disposition of cases with its equal interest in ensuring that the ends of justice are attained. In view of the circumstances presented in this appeal we reluctantly reverse and remand for a new trial. The use of the word reluctantly in the preceding sentence does not mean that this court is unsure of the rightness of its ruling. It does mean that this court is cognizant of both the intent of Supreme Court Rule 231(a) (107 Ill. 2d R. 231(a)) and of the difficulties inherent in implementing that rule under certain circumstances.

The intent of Supreme Court Rule 231(a) is to require the moving party to furnish the trial judge with adequate information upon which to make a reasonable decision. Courts are cautioned against granting continuances at the last minute, particularly after a case has been called for trial or after the trial is actually underway. *Waltz v. Schlattman* (1980), 81 Ill. App. 3d 971, 401 N.E.2d 994; *Montgomery v. Terminal R.R. Association* (1979), 73 Ill. App. 3d 650, 392 N.E.2d 77.

What facts then justify our reversal of the trial court's decision, reluctant though the reversal might be?

This is a medical malpractice suit brought against the defendant doctor, Faustino V. Pugeda, in which the plaintiff claimed that the sterilization procedure performed upon her was negligently done and that as a result she suffered an unwanted pregnancy. During the original sterilization procedure of January 12, 1983, the defendant made a small incision in the abdomen, inserted a laparoscope and visualized the Fallopian tubes. He then inserted an additional instrument, grasped the tube, made a loop in the tube approximately $1\frac{1}{2}$ to 2 centimeters long and placed a ring around this loop and tightened it. This procedure was performed upon both the right and left Fallopian tubes. The theory behind this type of procedure is that within a few days or weeks the portions of the Fallopian tubes enclosed in the ring will become necrotic and they will fall apart, rendering the patient sterile.

The plaintiff became pregnant following this procedure and on February 17, 1984, gave birth to a son. The next day the defendant performed a second and different type of sterilization procedure. The

question of whether the defendant removed all or only a small portion of the Fallopian tubes during this second procedure was to become the subject of significant controversy at trial and indeed is the underlying basis for this appeal. Therefore the testimony concerning this procedure and the timing of that testimony will be discussed in some detail.

The first reference to the second surgery was contained in the defendant's operative notes which described it as a bilateral salpingectomy, or removal of the entire right and left Fallopian tubes. Dr. Katubig, the pathologist who examined the sections of the tubes shortly after their removal, also described the procedure as a bilateral salpingectomy. In addition, Dr. Katubig's original notes indicated that the portion of the right tube that was submitted to him measured one centimeter in length while the left tube specimen was seven centimeters long. His original notes also indicated that no scarring or other abnormality was observed on either specimen.

The lack of scarring and the seven-centimeter length of the left tube formed the basis of the plaintiff's expert's opinion of malpractice; that is, since the Fallopian tube is 7 to 10 centimeters long in its entirety, and since the seven-centimeter section of the left tube was described by Dr. Katubig as without scars or other abnormalities, the ring could not have been properly applied in the original surgery, for if it had been, there would have been scarring somewhere in the seven-centimeter section.

Returning to a chronological review of the references to the length of the removed tubes, the record reveals that the defendant's deposition of October 17, 1985, implied that the tubes were removed in their entirety. In December of 1986, Dr. Katubig did indicate that his pathology report was in error and that only zero point seven (0.7) centimeters were submitted to him rather than the seven centimeters stated in his original report. However, following Dr. Katubig's deposition in December of 1986 came the defendant's expert's discovery deposition in January of 1987 in which he stated that Dr. Pugeda had removed the entire tubes and formulated his opinion based on the removal of the entire tubes.

A summary of the pretrial information on the second surgery discloses the following:

(1.) Defendant's operative notes of February 18, 1984—bilateral salpingectomy, *i.e.*, total removal of tubes.

(2.) Dr. Katubig's pathology report approximately February 18, 1984—removal of both tubes, one centimeter of the right, seven centimeters of the left.

(3.) Defendant's deposition, October 17, 1985—implies total removal of both tubes.

(4.) Dr. Katubig's deposition of December 1986—removal of one centimeter of right tube and zero point seven (0.7) centimeters of left tube.

(5.) Dr. Fischer's (defendant's expert's) deposition of January 28, 1987—relies upon total removal of tubes in formulating his opinion.

With this background we turn to the testimony at trial. On March 9, 1987, the first day of trial, the defendant was called under section 2—1102 (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102) as the plaintiff's first witness. He testified: "I removed the tubes on both sides, left and right side." This statement was essentially a reiteration of his earlier operative notes and of his testimony at the time of his deposition. The plaintiff's expert then testified and relied upon the February 18, 1984, removal of an unscarred seven-centimeter section of the left Fallopian tube in formulating his opinion. That concluded the first day of trial.

On the next day the plaintiff testified on her own behalf and then rested her case. The defendant was then called in his own case and testified as follows:

"Q. How much of the tubes did you remove?

A. About a centimeter.

Q. On each side?

A. On the right side and I believe about a centimeter on the left side."

On cross-examination the defendant acknowledged that bilateral salpingectomy meant the removal of the entire tubes, but explained the use of that term in his operative notes as a misnomer.

On the third and last day of trial the defendant's expert, Dr. Fischer, testified and indicated that from reading Dr. Pugeda's report you would think that he had taken out the entire tube, but that the pathology report revealed that he took out only a segment of the tube. Dr. Fischer admitted that he had known at the time of his deposition in January 1987 that Dr. Katubig had changed the seven-centimeter measurement of his report to zero point seven centimeters so that the change in the pathology report was not the basis of the change in his opinion. Rather, Dr. Fischer's opinion changed because of the information furnished by defendant's counsel to him the evening before: that is that Dr. Pugeda had changed his testimony as to what portion of the tubes had been removed during the course of trial.

Immediately following the testimony of Dr. Fischer, the plaintiff's counsel requested a continuance, "hopefully until tomorrow." The motion was denied and there was a verdict for the defendant.

Plaintiff's post-trial motion was accompanied by affidavits and a medical report which indicated that both of the plaintiff's Fallopian tubes were absent in their entirety when her abdomen was examined in a subsequent unrelated surgery and that the plaintiff had undergone no surgeries in that area other than the February 18, 1984, surgery which was the subject of the changed testimony. The trial court indicated that if the additional information that was presented in the post-trial motion had been available to him at the time that the motion for a continuance was made, he might have allowed it, but under the circumstances he felt that the motion for a continuance had been too vague and was therefore properly denied and he consequently denied the post-trial motion. This appeal followed.

Supreme Court Rule 231(a) (107 Ill. 2d R. 231(a)) requires an affidavit in support of a motion for continuance and that the affidavit set forth certain information:

> "Absence of Material Evidence. If either party applies for a continuance of a cause on account of the absence of material evidence, the motion shall be supported by the affidavit of the party so applying or his authorized agent. The affidavit shall show (1) that due diligence has been used to obtain the evidence, or the want of time to obtain it; (2) of what particular fact or facts the evidence consists; (3) if the evidence consists of the testimony of a witness, his place of residence, or if his place of residence is not known, that due diligence has been used to ascertain it; and (4) that if further time is given the evidence can be procured."

The defendant originally contends that the denial of a motion for continuance cannot be regarded as an abuse of discretion when the affidavit requirement of Supreme Court Rule 231(a) has not been met. (*Mikarovski v. Wesson* (1986), 142 Ill. App. 3d 193, 491 N.E.2d 864.) The defendant cites the case of *Mann v. People* (1981), 98 Ill. App. 3d 448, 424 N.E.2d 883, for the proposition that a trial judge has no discretion to grant a motion for continuance absent the filing of an affidavit.

The potential harshness of such a rule and the ultimate restrictiveness of its application to trial courts suggests that the background of the rule deserves some examination. This will be done in a chronological order.

1958: An abstract of an opinion by the First District Appellate

Court in *Ellick v. Clayton Motor Co.* (1958), 16 Ill. App. 2d 151, 147 N.E.2d 400, is published. One of the two headnotes reads: "Refusal to grant continuance because of illness of principal witness was within court's discretion, where defendant did not comply with court rule requiring affidavit concerning availability of material witness and nature of his testimony." 147 N.E.2d 400.

1964: In *DeBolt v. Wallace* (1964), 56 Ill. App. 2d 380, 206 N.E.2d 469, the plaintiff was injured when the motorcycle he was riding was struck by an automobile and the jury returned a verdict for the plaintiff for $36,000. On the final day of trial, defense counsel had orally moved for a continuance until the next day, to enable him to put on the testimony of an orthopedic surgeon. No written motion accompanied by affidavit was presented. The Third District Appellate Court held that "[u]nder the circumstances the ruling in this case cannot be regarded as an abuse of discretion." (*DeBolt*, 56 Ill. App. 2d at 384, 206 N.E.2d at 472.) The only authority cited by the court was Supreme Court Rule 14 (7 Ill. 2d R. 14), which is now Supreme Court Rule 231(a).

1972: In *People ex rel. Bucaro v. Johnson* (1972), 8 Ill. App. 3d 618, 291 N.E.2d 9, a paternity proceeding, the defendant's request for a continuance on the day of trial was denied. The First District Appellate Court, quoted Rule 231(a) and noted that the motion was made orally and there was no affidavit to indicate what testimony the witnesses would offer. The court stated: "The defendant did not comply with the rule, and we hold that denying the continuance was not an abuse of discretion." *Johnson*, 8 Ill. App. 3d at 622, 291 N.E.2d at 12.

1973: In *Parker v. Newman* (1973), 10 Ill. App. 3d 1019, 295 N.E.2d 503, the Third District Appellate Court, after finding that the trial court did not abuse its discretion in denying a continuance because the plaintiff had failed to show a lack of due diligence, stated:

"Furthermore, it appears that the plaintiff's motion for a continuance was not supported by an affidavit as required by Supreme Court Rule 231. In a number of cases it has been held that where no affidavit has been filed (*Ellick v. Clayton Motor Co.*, 16 Ill. App. 2d 151[, 147 N.E.2d 400]; see *DeBolt v. Wallace*, 56 Ill. App. 2d 380, 384[, 206 N.E.2d 469]), or the affidavit does not meet the requirements of Rule 231 [citations], denial of a motion for continuance cannot be regarded as an abuse of discretion. Therefore we must hold, we believe, that denial of the plaintiff's motion for continuance was within the discretion of the trial court in the case before us." *Parker*, 10

Ill. App. 3d at 1021-22, 295 N.E.2d at 506.

This appears to be the first unequivocal statement of the rule that a denial of a motion for continuance cannot be regarded as an abuse of discretion where no affidavit has been filed. The court's citations to *Ellick* and *DeBolt* do not, of course, offer significant support for its newly announced rule. While both *Ellick* and *DeBolt* held that it was not an abuse of discretion to deny a continuance where no affidavit had been filed, neither case suggested that the absence of an affidavit precludes a finding of an abuse of discretion.

1973: In *Atlee Electric Co. v. Johnson Construction Co.* (1973), 14 Ill. App. 3d 716, 303 N.E.2d 192, an action by an electrical subcontractor for foreclosure of a mechanic's lien, the defendants argued that the trial court erred in denying their motion for continuance made on the date of trial so that the defendants could bring in an absent witness from Florida and to enable the filing of an amended answer. After disposing of the amendment question, the First District Appellate Court stated:

> "As regards the absent witness, the rights of the parties are governed by Rule 231(a) of the Supreme Court. [Citation.] There was no compliance with this rule by defendants. No affidavit was submitted to the trial court in accordance with the rule. Thus, there was no abuse of discretion in denying the continuance. (*People ex rel. Bucaro v. Johnson*, 8 Ill. App. 3d 618, 622, 291 N.E.2d 9.) In addition, this argument by defendants is rendered nugatory by the fact that the witness in question actually appeared at the trial and testified in their behalf." *Atlee*, 14 Ill. App. 3d at 722, 303 N.E.2d at 197.

While the statement for which the *Mann v. People* case cites *Atlee* is contained in the above-quoted portion of the opinion, the strength of the statement is certainly reduced by the last sentence of the quoted material.

1977: In *Bullistron v. Augustana Hospital* (1977), 52 Ill. App. 3d 66, 367 N.E.2d 88, a medical malpractice suit, the plaintiff made an oral motion for a continuance to permit additional time in which to obtain an expert. The First District Appellate Court noted that the plaintiff had failed to comply with the requirements of Supreme Court Rule 231 and stated: "Failure to comply with the relevant statutory provisions is, of itself, grounds for denial of a motion for continuance," citing *Parker v. Newman* (*Bullistron*, 52 Ill. App. 3d at 71, 367 N.E.2d at 92). The court went on to hold, however, that the denial of the continuance was proper because the plaintiff had failed to allege or establish diligence.

1977: In *Kincl v. Hycel, Inc.* (1977), 56 Ill. App. 3d 772, 372 N.E.2d 385, another medical malpractice case, the defendant claimed that the trial court erred in refusing to grant a continuance after the defendant was surprised by the evidence deposition testimony of a witness. The First District Appellate Court noted that defendant's motion was made in the midst of trial, it was not supported by an affidavit showing how the defendant was surprised, and most significantly, the defendant had taken a discovery deposition of the witness. The court held that given those circumstances, the refusal of the motion for a continuance was not an abuse of discretion or a palpable injustice, citing, *inter alia, Parker v. Newman.*

Again, while the *Kincl* court did not hold that an abuse of discretion can never occur where the affidavit requirement has not been met, it was cited as authority for that statement by the court in the next case.

1980: In *Feder v. Hiera* (1980), 85 Ill. App. 3d 1001, 407 N.E.2d 799, another first district case, a court-appointed receiver and his attorney petitioned the court for fees after completing a lien foreclosure. While the facts are somewhat confusing, it appears that after approximately 10 continuances the trial judge refused to continue the case any further. The appellate court appeared to base its decision affirming the denial of the continuance on this factor and also because no offer of proof or other information was provided to the trial court as to the evidence that the absent plaintiffs could have presented. The court also noted, however, that the motion was not supported by an affidavit and stated:

> "It is established when no such supporting affidavit is filed the denial of the motion for a continuance cannot be regarded as abuse of discretion." *Feder*, 85 Ill. App. 3d at 1003, 467 N.E.2d at 801.

The court cited *Kincl v. Hycel, Inc.* and *Parker v. Newman* as authority for this statement. *Kincl* provides little support for this statement, and while *Parker* does support it, the cases on which it relies do not themselves provide support.

1981: In *Mann v. People* (1981), 98 Ill. App. 3d 448, 424 N.E.2d 883, Judge Mills of the Fourth District Appellate Court held that it is an abuse of discretion for a court to grant a continuance in the absence of the affidavit required by Rule 231(a). In discussing Rule 231(a), the court stated that "a number of cases have held that if a motion for a continuance, on account of the absence of material evidence, is not accompanied by an affidavit, the trial court's denial of the motion cannot be regarded as an abuse of its discretion," citing

*Feder v. Hiera, Atlee Electric Co. v. Johnson Construction Co.*, and *Parker v. Newman*. (*Mann*, 98 Ill. App. 3d at 451, 424 N.E.2d at 885.) As discussed above, *Atlee* did not hold that a failure to file an affidavit *precludes* a finding of an abuse of discretion, while the holdings in *Feder* and *Parker* are not supported by the cases they cited as authority. The *Mann* court held, however, that a trial court has no discretion to grant a continuance unless an affidavit has been filed because of the language in Rule 231 that "the motion *shall* be supported" by affidavit (emphasis added) (107 Ill. 2d R. 231).

1986: In *Mikarovski v. Wesson* (1986), 142 Ill. App. 3d 193, 491 N.E.2d 864, the plaintiff's father sued for the wrongful death of his daughter. On the day of trial the plaintiff's expert witness failed to appear, either because of car trouble or because he was testifying in another case. The court recessed at 11:45 a.m. and resumed at approximately 1:30 p.m., at which time the plaintiff orally requested a continuance because the expert had not yet appeared. Plaintiff indicated that he was unable to make an offer of proof as to the substance of the proposed testimony and defense counsel objected to the continuance. The trial court denied the motion for a continuance, indicating there was no method of determining the nature of the expert's proposed testimony, and then granted defendant's motion for a directed verdict. On appeal the plaintiff contended that the trial court erred in denying the motion for a continuance. The Second District Appellate Court, noting that no affidavit had been filed as required by Supreme Court Rule 231(a), affirmed the denial of the continuance, stating: "A denial of a motion for continuance cannot be regarded as an abuse of discretion where the requirements of Supreme Court Rule 231(a) (87 Ill. 2d R. 231(a)) have not been met." (*Mikarovski*, 142 Ill. App. 3d at 195, 491 N.E.2d at 865.) As authority, the court cited *Mann v. People* and *Feder v. Hiera*. See also *Chakos v. Illinois State Toll Highway Authority* (1988), 169 Ill. App. 3d 1018, 524 N.E.2d 615 (no abuse of discretion in denying continuance where affidavit was not filed, citing *Feder*); *In re Marriage of Shalashnow* (1987), 159 Ill. App. 3d 760, 512 N.E.2d 1076 (trial court abused discretion in granting continuance where no affidavit was filed, citing *Mann*); *Wine v. Bauerfreund* (1987), 155 Ill. App. 3d 19, 507 N.E.2d 155 (failure to file affidavit warrants exercise of court's discretion in denying continuance, citing *Feder*); *Spillers v. First National Bank* (1982), 109 Ill. App. 3d 1100, 441 N.E.2d 872 (trial court erred in granting continuance without requiring affidavit, following *Mann*).

■ The *Mann* court, in announcing its new rule that a trial court cannot grant a continuance unless an affidavit is filed, reasoned that

the use of the word "shall" in Rule 231 left the court with no discretion. (*Mann*, 98 Ill. App. 3d at 452, 424 N.E.2d at 885.) While we agree that the use of the word "shall" usually indicates that a particular action is mandatory, we believe that such an inflexible rule is unwarranted and its application would, in some cases, be manifestly unfair. To use an extreme example, if a party's only readily available expert witness should become incapacitated or die during trial, at which time the party's attorney also becomes ill, one could not reasonably expect that party to be aware that Supreme Court Rule 231 requires an affidavit to support a motion for continuance. Moreover, we do not believe that the potentially harsh results inherent in the rule announced in *Mann* are in harmony with other, less exacting, rules promulgated by our supreme court governing extensions of time (107 Ill. 2d R. 183 ("This court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time")) and continuances on the court's own motion (107 Ill. 2d R. 231(e) ("The court may on its own motion, or with the consent of the adverse party, continue a cause for trial to a later day")). This is particularly true in view of authorities which have approved trial courts granting continuances based upon oral motions. (See, *e.g.*, *Duran v. Chicago & North Western Ry. Co.* (1975), 26 Ill. App. 3d 645, 325 N.E.2d 368; *In re Estate of Adams* (1952), 348 Ill. App. 115, 108 N.E.2d 32.) Furthermore, we note that the Second District Appellate Court, in *Rutzen v. Pertile* (1988), 172 Ill. App. 3d 968, 527 N.E.2d 603, held that the trial court abused its discretion in failing to grant a continuance even though no affidavit was filed. In view of the foregoing we decline to follow the rule of the court in *Mann v. People* and hold that under the circumstances of this case the trial court abused its discretion in refusing the continuance even though no affidavit was filed.

■ The plaintiff contends that the defendant waived his objection to the plaintiff's failure to file an affidavit by failing to object at trial. While the failure to object to the lack of the affidavit may waive the formal requirement, the substantive requirements of the contents of the affidavit are not waived. *Mikarovski v. Wesson* (1986), 142 Ill. App. 3d 193, 491 N.E.2d 864; *Westlake v. Moffitt* (1975), 30 Ill. App. 3d 597, 334 N.E.2d 198.

The question then arises, did the oral statements of plaintiff's counsel made to the court at the time of his motion for continuance constitute substantial compliance with the requirements of Supreme

Court Rule 231? Plaintiff's counsel's statements to the court are set out below:

> ATTORNEY CULLEY: "Your Honor, at this time I would like to make a motion for a continuance hopefully until tomorrow and I will immediately try to locate the physician that I expect to call. The basis for my continuance is this, is that on Monday of direct examination of an adverse witness I asked this Defendant if he removed the entire tube, both right and left, and he responded to that question yes. Yesterday on direct examination by Mr. Brandon he changed his testimony and said he only did a partial bilateral-salpingectomy, which is a big difference in this lawsuit. I reviewed my reports last night based upon that and came up with Dr. Jacob's report that I have previously obtained. And that report shows that on May the 20th, 1985, that unequivocally both of these tubes are gone. I further documented that, Your Honor, at least one side because after I got this I then reviewed the pathology report of this young lady's hysterectomy and in June of '86 that pathologist also informed me that the right tube was completely gone. She didn't have any evidence on the left tube because they left in the left ovary. I have subpoenaed her but I am at a loss to the left tube. Based upon Dr. Fischer's testimony here this morning I feel compelled to ask the Court's indulgence to try to produce this man. My client is prepared to testify that there has been no surgical procedures that would in any way affect this report from February of 1984 until May of 1985. And, therefore, if both tubes were absent they would have been absent after this man left the abdomen on February the 18th, 1984."

■ We agree with the plaintiff that the substantial compliance requirement was met. That the plaintiff exercised due diligence under the circumstances of this case cannot be argued. The defendant doctor testified one way on the first day of trial and another way on the second day of trial. The defense expert testified one way in his discovery deposition and another way on the third day of trial. Immediately after this last change the plaintiff moved for a continuance. Due diligence was established. We also note that the requirement of due diligence has often been mentioned as the most decisive factor in determining whether or not the continuance should be granted. *Bethany Reformed Church v. Hager* (1979), 68 Ill. App. 3d 509, 386 N.E.2d 514; *Krupinski v. Denison* (1956), 9 Ill. App. 2d 155, 132 N.E.2d 451.

The second element of Supreme Court Rule 231, "of what particular fact or facts the evidence consists," is important because its pur-

pose is to advise the trial court of the materiality and significance of the evidence. This requirement was essentially met by the information contained in the plaintiff's counsel's statement in support of his motion. While counsel did not proffer a copy of Dr. Jacob's report to the court at the time of the motion for continuance, he did at the time of the post-trial motion. In addition the most important element, the absence of both tubes, was presented at the time of the motion.

The third element, the address of the witness, was admittedly not furnished to the court in the plaintiff's oral statement. However, defense counsel had a copy of Dr. Jacob's report, was obviously aware of that, and in fact furnished the information on that point to the court.

The fourth requirement of Supreme Court Rule 231, that "if further time is given the evidence can be procured," is the most troublesome omission in this case. The purpose of that requirement is to indicate to the court that if further time is allowed the witness or the evidence will be available. If a situation were presented in which all other requirements of Supreme Court Rule 231(a) were complied with, but the sought after witness was dying, and would in all likelihood die before even a deposition could be taken, it would not avail the movant or anyone for the court to grant a continuance.

In this case the plaintiff's counsel requested a continuance "hopefully until tomorrow." While this is admittedly vague, it is also apparent that plaintiff's counsel was being honest with the court. Given the way the evidence developed during the trial and given the fact that plaintiff's counsel made the motion immediately upon the completion of Dr. Fischer's testimony, he could hardly have assured the court that Dr. Jacobs would be available the next day. If the trial court had granted a continuance until the next day and plaintiff's counsel had been unable to secure the presence of Dr. Jacobs, then the court might well have ruled that the trial could not be extended indefinitely, a situation which Rule 231(a) is intended to avoid. To simply deny the motion in view of both the substantial change in testimony and its timing was, in our view, an abuse of discretion.

This abuse could and should have been corrected by the trial court when it ruled on the plaintiff's post-trial motion. At that time any needed additional information was available. The importance of the witness to the plaintiff's case, which should have been apparent at the time of the motion for continuance, was certainly obvious by the time of the post-trial motion and the relief sought by the plaintiff should have been granted.

■ The defendant also contends that the denial to the plaintiff of

the opportunity to present the testimony of Dr. Jacobs does not rise to the level of the "specially grave reasons" required if the continuance is to be granted after the case has reached the trial stage (*Montgomery v. Terminal R.R. Association* (1979), 73 Ill. App. 3d 650, 392 N.E.2d 77).

The defendant's argument against the gravity of the situation has two bases: (1) the testimony would have been used only for impeachment purposes and the plaintiff had already impeached the defendant with his prior inconsistent statement from his deposition; and (2) the testimony related only to the second surgery, which was not the subject of the malpractice claim, and did not go to the standard of care of the defendant.

The defendant is only partially correct in each of his contentions. With regard to the first, it is true that the plaintiff was able to impeach the defendant by the use of a prior inconsistent statement, but this would not preclude the plaintiff from presenting extrinsic evidence in rebuttal. (*Gabrenas v. R.D. Werner Co.* (1983), 116 Ill. App. 3d 276, 451 N.E.2d 1307; *Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 405 N.E.2d 1082.) The presentation of an unbiased witness, Dr. Jacobs, who would testify to the complete absence of the plaintiff's Fallopian tubes would have been devastating to the defendant's position given the way the case had developed.

With regard to the second contention it is true that the evidence related only to the second surgery. This does not, however, preclude its consideration by the jury in reference to the question of the alleged deviation from the standard of care in the first surgery. The plaintiff's entire case was based upon the unscarred portion of the tube. The plaintiff's own expert had indicated that he could not testify that the defendant had deviated from the standard of care if only a small portion of the tube had been submitted to Dr. Katubig. Thus the testimony would have related to the original surgery and the standard of care issue.

In conclusion, this case must be reversed and remanded for a new trial. The significance of the change in testimony, when coupled with its timing, requires this result. The importance of the prompt disposition of cases and compliance with the dictates of Supreme Court Rule 231 cannot be allowed to overshadow the ultimate aim of all courts: the attainment of a just result.

Reversed and remanded.

GOLDENHERSH and RARICK, JJ., concur.