Roscoe Howard, Plaintiff-Appellee, v. Gulf, Mobile &
Ohio Railroad Company, Defendant-Appellant.

Term No. 57–F–6.

Fourth District.

May 15, 1957.

Released for publication June 4, 1957.

Oehmke, Dunham & Boman, of East St. Louis, and Gillespie, Burke & Gillespie, of Springfield (Wm. C. Dunham, and Thomas Keefe, of East St. Louis, Louis F. Gillespie, and George B. Gillespie, of Springfield, of counsel) for defendant-appellant.

William C. Wines, and Graham & McElligott, all of Chicago, and Baker, Kagy & Wagner, of East St. Louis (William C. Wines, Errett O. Graham, and John A. McElligott, of Chicago, and Bernard H. Bertrand, of East St. Louis, of counsel) for plaintiff-appellee.

PRESIDING JUSTICE SCHEINEMAN delivered the opinion of the court.

Plaintiff Roscoe Howard was injured during the course of his employment as fireman by the defendant railroad, and he filed this suit under the Federal Employers Liability Act. He obtained judgment on a verdict of $125,000, and the post-trial motions of defendant were overruled. On this appeal the defendant concedes that the evidence adequately disclosed negligence on its part, but asserts there are other errors requiring reversal.

The accident in question occurred at night in an unlighted area. The engine, on which plaintiff was the

fireman, was backing, pushing a caboose around a long curve, and this car obstructed the light on the rear of the tender so that there was no illumination of the track ahead. A switchman with a hand lantern for signalling was on the lead platform of the caboose, on the engineer's side. The engineer was on the inner side of the curve, where he had a view ahead so far as visibility permitted. The fireman at his post was on the convex side of the curve where he could neither see the switchman nor the terrain ahead. The train came upon some loaded gondolas, which the lookout did not see in time (he said he was looking for box cars), he jumped to safety, giving no signal to the engineer, a collision ensued, and plaintiff was thrown and injured.

██ The plaintiff was 31 years of age at the time of his injury and 32 at the time of the trial. An actuary testifying as a witness for the plaintiff gave the life expectancy based upon tables and explained the method of computing the present value of future earnings by the use of various rates of interest. He also qualified to testify as to work expectancy, based upon statistics published by the Railroad Retirement Board, which would include the factor of possible incapacity and other causes which might terminate or diminish a railroad employee's career. This latter testimony was excluded pursuant to an objection made by the defendant. Complaint is made in this court that the testimony of the actuary was based upon life expectancy with no evidence of work expectancy, but this alleged error cannot be considered here, since the ruling which excluded this evidence was obtained by the defendant on its own objection.

██ The defendant cites the case of Avance v. Thompson, 387 Ill. 77; also Allendorf v. Elgin, J. & E. Ry. Co., 8 Ill.2d 164, concerning the possibility of misleading the jury in the use of life expectancy statistics. The defendant tendered no instruction pertaining to their use, but the plaintiff did tender, and the court

gave the following instruction which, in our opinion, meets the requirements outlined by the cases cited.

"The court instructs the jury that any evidence introduced of life expectancy of a person of 32 years of age is only an estimate and is not conclusive, and that if the jury considers such evidence and testimony, they should do so in the light of the jury's general knowledge and good judgment of what plaintiff's life expectancy would be, considering that some persons may live beyond the age of expectancy and that some persons may not live to reach the age of expectancy; that some persons may work all the years of their lives and that other persons may not so work; that the earnings of some persons may not remain stationary, but may reasonably be expected to increase in the future or may reasonably be expected to diminish in the future. The expectancy of life should not be used as a factor by multiplying the years of expectancy by the annual earnings."

Three points raised by the defense require a summary of the medical evidence. It is too voluminous and complicated to permit full detail. An orthopedic surgeon and a neurological surgeon testified for plaintiff. A variety of specialists, seven in all, appeared on the defense.

For the plaintiff: The anterior curve of the cervical spine is reversed. Limited motion of head and neck. Torticollis (wry neck) tends to tilt his head to the right and twist his chin to the left. Paralysis of left arm and some of left leg. Atrophy of these limbs caused by nonuse. Spasm of the muscles which control head and neck. Pain in movement has produced nervousness called functional overlay, or anxiety neurosis, which means fear of pain, causes him to limit his movements to less than his physical condition would permit; also results in spasmodic shaking or tremor of the head when unsupported. Anatomical cause is not known,

but several possibilities are suggested which might be improved by surgery. In absence of surgery, present condition is permanent. Surgery recommended because it might bring improvement, possibly substantial, but there is no means of knowing except by trying, and patient refused.

For defendant: Various examinations, including X-rays and other tests, failed to disclose damage to bone structure. For ten months he was under examination and treatment by an able staff. Several times he was placed in traction for days or weeks. Also tried wearing a cast that held his head and neck rigid. Also was supplied with a Thomas collar. At times he appeared to improve, but as soon as he tried to exert himself, the symptoms returned. Symptoms indicate damage to muscle and soft tissue, but under the treatment given, this should have cleared up. Nothing said about surgery. The anxiety neurosis is recognized. It is not malingering, the patient wants to get well and cooperates in suggested treatment.

At present, the patient lies in bed traction at night, and by day wears a leather collar with steel plates against chest and back to support the head. Removal causes tremor and muscle spasm and swelling. The three points made by the defense in connection with the foregoing are as follows:

■ First. It is said there is no evidence of permanent injury, therefore the use of expectancy tables was error. With this we cannot agree. The orthopedist testified that the present conditions are permanent. He had recommended a serious operation, on the possibility that some pathology might be found that could be corrected. He thought it worth while to try, in the hope that plaintiff's pain and discomfort might be alleviated, but he was merely expressing a hope rather than an opinion. Cross-examined on this, he declined to conjecture on the subject. He was cor-

roborated by the neuro-surgeon. We find the evidence of permanent disability is entirely adequate.

██ Second. It is argued that plaintiff has refused to submit to an operation to prevent his being cured prior to trial. Perhaps, in some cases, there may be a duty to submit to surgery to minimize damages, such as where there is a known disability that readily yields to a comparatively simple technique, according to medical experience. The general rule is that an injured person is under no obligation to undergo a serious operation to minimize the liability of a tortfeasor. See Annotation, 11 A. L. R. 230. Since the proposed surgery in this case is serious, not minor, besides being completely uncertain as to results, the plaintiff had no obligation to submit thereto.

Third. It is contended that the court erred in permitting the plaintiff, over objection, to have his collar removed to demonstrate his affliction. It is said that, upon removal, the patient's head shook and he groaned and made sounds of pain.

██ The Second Appellate District has taken the position that a plaintiff has a right to exhibit his injury, and that it is reversible error to prohibit it. Stegall v. Carlson, 6 Ill.App.2d 388; Villegas v. Kercher, 11 Ill.App.2d 282. This court has not gone to that extent. Whether it be called real evidence, or demonstrative, in our opinion the rule is the same: it is primarily in the discretion of the trial judge whether to permit the exhibition. The possibility that the demonstration may be unpleasant or gruesome is not determinative, but should be considered and weighed against the possible usefulness to the jury. Smith v. Ohio Oil Co., 10 Ill.App.2d 67.

In this case there was involved a mental problem which, to a layman, might mean that the plaintiff could overcome his illness, or fancied illness, if he but made up his mind to it. He was in court wearing a heavy collar, which would look uncomfortable, yet

there was no broken back, or fractured vertebra in evidence. We are of the opinion that, under the circumstances, the trial judge could properly permit the jury to have their own view of his ailment, the better to understand what would happen, and whether it might be real or sham. It was later in the trial that the defense witnesses testified there was no malingering. Moreover, the demonstration would properly clarify what the doctor meant when he said the patient "likes his collar, he has confidence in it." Accordingly, this court declines to rule that there was an abuse of discretion by the trial court.

■ Other objections concern instructions: it is contended that the instruction on the subject of damages improperly assumed that the plaintiff's injuries were permanent. The instruction complained of is in the frequently used form of damage instruction which begins and ends with references to the greater weight of the evidence and in between consists largely of a repetition of the words, "if any." The insertion of these words at frequent intervals makes the instruction cumbersome, and is the type of thing which the public derides as "lawyer language." While this form probably could be improved, it certainly is not subject to the objection urged by the defendant. It does not assume anything.

■ This instruction was also objected to on the ground that it did not require the jury to reduce the damages in proportion to any contributory negligence on the part of plaintiff. Under the facts of this case as first above recited, we doubt that a disinterested person would find any basis for the claim of contributory negligence. Aside from that, the court gave at defendant's request, an instruction concerning the effect of contributory negligence on the allowance of damages. It is not necessary that every phase of the question of damages be covered by the single instruction. The instructions must be taken as a series,

■■■■■■■■■■

and this particular method of instructing has been approved by this court. Sprickerhoff v. Baltimore & O. R. Co., 323 Ill. App. 340, 352; Nickell v. Baltimore & O. R. Co., 347 Ill. App. 202, 209.

Finally, objection is made to an instruction which informed the jury, in the language of the statute, that an employee under the Act does not assume the risks of his employment, where his injuries resulted in whole or in part from the negligence of other agents or employees of the carrier.

■■ ■■ Perhaps the instruction was unnecessary under the pleadings, but it is common in these cases for the carrier to argue, without evidentiary basis, that the plaintiff could have given orders or made requirements, before proceeding in the usual course of his employment. Then it is asserted that he was guilty of contributory negligence for performing his duties without protest in the presence of risk. The defense of assumed risk cannot be revived under some other name. Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 87 L. Ed. 610, 63 S. Ct. 444. We adhere to the rule that the giving of this instruction cannot be held reversible error. Sprickerhoff v. Baltimore & O. R. Co., 323 Ill. App. 340; Nickell v. Baltimore & O. R. Co., 347 Ill. App. 202; Larsen v. Chicago & N. W. R. Co., 171 F.2d 841.

The plaintiff has been incapacitated by serious, painful, and permanent injuries; there appears no reversible error in the trial, and the judgment is affirmed.

Judgment affirmed.

CULBERTSON and BARDENS, JJ., concur.