MOIRA McDONNELL, Ex'x of the Estate of John G. McDonnell, Deceased, Plaintiff-Appellant, v. RICHARD F. McPARTLIN III *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—97—1822

Opinion filed February 25, 1999.

Corboy & Demetrio, P.C., of Chicago, for appellant.

William F. Cunningham and Maura W. Moore, both of Cunningham, Meyer & Vedrine, of Wheaton, for appellees Richard F. McPartlin III, and Richard F. McPartlin III, Ltd.

Hinshaw & Culbertson, of Chicago (E. Michael Kelly, Stephen R. Swofford, and Christine L. Olson, of counsel), for appellees Thomas Mullin, Jr., and Du Page Emergency Physicians, Ltd.

JUSTICE WOLFSON delivered the opinion of the court:

In this professional medical negligence trial two doctors were accused of failing to timely diagnose and treat John McDonnell's hip infection, proximately causing his eventual death. While the defendants denied they were negligent and denied anything they did was a proximate cause of the injury, they also contended, among other things, a nonparty doctor's conduct was the sole proximate cause of the injury.

The jury returned a verdict for the defendant doctors. This appeal requires us to examine the matter of sole proximate cause, along with other claims of error that include improper evidence and instructions on matters of contributory negligence and mitigation of damages. We affirm judgment on the jury's verdict and on the trial court's order denying a motion for new trial.

FACTS

In April 1986, Dr. James Ahstrom (Dr. Ahstrom) performed hip replacement surgery on John McDonnell (John). Following this surgery, John's internist was Dr. Richard McPartlin (Dr. McPartlin).

On November 8, 1986, Moira McDonnell (Moira), John's wife, telephoned Dr. McPartlin because John felt sick. Dr. Barbara Loeb (Dr. Loeb) was covering Dr. McPartlin's patients in his absence and told Moira to bring John to the Good Samaritan Hospital emergency room.

Dr. Thomas Mullin, Jr. (Dr. Mullin), examined John at the emergency room and spoke with Dr. Loeb. Based on Dr. Mullin's description of John's condition, Dr. Loeb did not admit John to the hospital. John was instructed to telephone Dr. Loeb the next day with his blood-sugar level, so she could monitor closely his diabetes. John and Moira returned home.

The next day, November 9, Moira tested John's blood-sugar and telephoned Dr. Loeb. When she learned his blood-sugar level was significantly elevated, Dr. Loeb suggested John should return to the emergency room. John declined, choosing instead to control his blood-sugar level with insulin. Dr. Loeb agreed. Several hours later, John telephoned Dr. Loeb to explain his blood-sugar levels had decreased. John assured Dr. Loeb he would telephone Dr. McPartlin the next day.

The next day, November 10, John still felt sick, and Dr. McPartlin admitted him to the intensive care unit of Good Samaritan Hospital. Dr. McPartlin eventually diagnosed John's condition as an overwhelming bacterial infection centered in his surgically replaced hip. As the

infection progressed, Dr. Ahstrom advised Moira that another hip surgery could kill John because the infection had become so advanced. Dr. Ahstrom also advised Moira not to consent to another surgery. Moira followed Dr. Ahstrom's advice. ·

In December 1986, John was transferred to Rush-Presbyterian-St. Luke's Hospital, where his surgically replaced hip was removed. John died in February 1987 from heart failure associated with the infection.

Moira, as executrix of her husband's estate, filed a medical malpractice complaint against, *inter alia*, Dr. McPartlin and Dr. Mullin. Moira alleged Dr. Mullin negligently failed to diagnose John's infection during his first trip to the Good Samaritan Hospital emergency room. Moira alleged Dr. McPartlin also negligently failed to timely diagnose the infection.

At trial, the jury found for the defendants. The trial court entered judgment on the jury's verdict and denied Moira's posttrial motions. This appeal followed.

DECISION

1. Sole Proximate Cause

During this trial the defendants repeatedly pointed to the empty chair. There was a great deal of testimony concerning Dr. Ahstrom's treatment of John, especially Dr. Ahstrom's unwillingness to remove John's surgically replaced hip. The defense lawyers were allowed to argue Dr. Ahstrom's conduct was the sole proximate cause of the injuries at issue. In addition, the defendants asked for and received, over objection, a jury instruction concerning sole proximate cause. See Illinois Pattern Jury Instructions, Civil, No. 12.04 (3d ed. 1995) (hereinafter IPI Civil 3d). Moira contends the trial court erred.

■ More than one issue was joined in this case. The plaintiff, of course, had to prove a defendant's professional negligence was a proximate cause of the injury in order to recover damages from that defendant. That meant establishing a standard of care, a deviation from that standard, and a causal connection between the deviation and the injuries sustained. *Evanston Hospital v. Crane*, 254 Ill. App. 3d 435, 441, 627 N.E.2d 29 (1993).

■ It bears repeating: "The element of proximate cause is an element of the *plaintiff's* case. The defendant is not required to plead lack of proximate cause as an affirmative defense." (Emphasis in original.) *Leonardi v. Loyola University*, 168 Ill. 2d 83, 93-94, 658 N.E.2d 450 (1995).

■ In this case, the defendants' general denials of any proximate cause were enough to allow them to raise the defense. *Leonardi*, 168

Ill. 2d at 101. The defendants did not assume any burden of proof when they presented evidence of Dr. Ahstrom's conduct. The sole proximate cause defense "merely focuses the attention of a properly instructed jury *** on the plaintiff's duty to prove that the defendant's conduct was a proximate cause of plaintiff's injury." *Leonardi*, 168 Ill. 2d at 94.

Whether a defendant is entitled to a sole proximate cause instruction depends on the evidence he presents. The defense fails when the evidence merely shows the defendant's negligence was one of several causes of the injury. In that case, the plaintiff has sustained his burden. That is, "a sole proximate cause instruction is not appropriate unless there is evidence that the *sole* proximate cause (not 'a' proximate cause) of a plaintiff's injury is conduct of another person or condition." (Emphasis in original.) *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 134, 679 N.E.2d 1202 (1997).

■Illinois Pattern Jury Instructions, Civil 3d, No. 12.04 is the sole proximate cause instruction received by the jury:

"More than one person may be to blame for causing an injury. If you decide that the defendant was negligent and that his negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.

However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant." IPI Civil 3d No. 12.04.

In the Notes on Use for IPI Civil 3d No. 12.04, the IPI committee said: "The second paragraph should be used only where there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of *** third person[s]." IPI Civil 3d No. 12.04, Notes on Use.

We believe this is such a case.

Dr. Ahstrom told the jury he considered removing John's artificial hip in November 1986, but declined: "At the time I felt that we had a chance of saving his weight-bearing ability."

The defense offered testimony that a range of treating doctors was telling Dr. Ahstrom the hip prosthesis should come out. On cross-examination:

"DEFENSE COUNSEL: Now, doctor, as of [November 21, 1986], you have the infectious disease doctor, the cardiologist, the surgeon, the internal medicine doctor all telling you *** that this hip, this hip prosthesis is not only in their judgment, in their opinion infected, that it's the source of the fever spikes, that it has to come out, and if it doesn't come out he is going to die, correct?

DR. AHSTROM: Well, that's what they wrote.

DEFENSE COUNSEL: And you disregarded all of their opinions, isn't that correct?

DR. AHSTROM: Well, I wrote my own opinion, yes."

In his November 21 notes Dr. Ahstrom responded to Dr. McPartlin's note that John "is doomed if prosthesis is not removed." Dr. Ahstrom wrote: "[John] cannot stand major procedure such as removal of prosthesis. I don't believe that is necessary anyhow at present."

Dr. Orth, one of John's treating physicians, said when he saw the patient for the first time on November 12, 1986, it was his opinion, to a reasonable degree of medical certainty, unless the hip was removed the patient would continue to have the infection and the infection eventually would kill him.

Dr. Shin, another of John's treating physicians, agreed John's artificial hip had to be removed "in order for him to be able to survive." John would have survived his infection, Dr. Shin said, if his artificial hip was removed sooner.

Dr. Gump, one of Moira's expert witnesses, on cross-examination:

"DEFENSE COUNSEL: Doctor, in particular, you agree with Dr. McPartlin's note of November 21, 1986 that the patient was doomed if the hip was not removed, isn't that true?

DR. GUMP: That is true."

Dr. Gump also said John likely would have survived the infection if his artificial hip was removed earlier, but that it was removed too late, the unfortunate outcome already a foregone conclusion.

Dr. Muehrcke, a defense expert, said that John's artificial hip had to be removed: "I don't believe there's any way that the infection and its effect on the patient could be stopped or—could be stopped without it coming out." The role of the orthopedic surgeon, he said, was not to determine whether a patient was capable of undergoing surgery.

During the crucial time, much of November and early December, Dr. Ahstrom was advising family members not to allow the surgery. They took his advice. When the operation finally was performed on December 5, 1986, it was too late. John died because of the infection in February 1987.

Based on this evidence, we cannot say the trial court abused its discretion by allowing testimony, argument, and instruction on sole proximate cause.

■ A defendant always is free to offer evidence that its conduct, negligent or not, was not a proximate cause of the injury. Here, expert testimony clearly established a basis for a jury finding that Dr. Ahstrom's conduct was the sole proximate cause of injury. Of course, we do not know the jury made that finding when it decided for the

defendants. No special interrogatory was offered "illuminating what role, if any, the sole proximate cause defense played in the jury's verdict." *Flores v. Cyborski*, 257 Ill. App. 3d 119, 135, 629 N.E.2d 74 (1993).

Under circumstances like those present here, the second paragraph of IPI Civil 3d No. 12.04 must be given to the jury "in order to correct any negative implications arising from the first paragraph." *Ellig v. Delnor Community Hospital*, 237 Ill. App. 3d 396, 408, 603 N.E.2d 1203 (1992). See also *Wojcik v. City of Chicago*, 299 Ill. App. 3d 964, 974, 702 N.E.2d 303 (1998) (some evidence in the record of sole proximate cause is sufficient to support the second paragraph of IPI Civil 3d No. 12.04).

Our conclusion rests on our belief that the "conduct" of the occupant of the empty chair does not have to attain the status of professional negligence.

■ The defendants' evidence of Dr. Ahstrom's conduct "in no way shifts to the defendant the burden of proof." *Leonardi*, 168 Ill. 2d at 94. Moira always had the burden of proving negligence of a defendant was a proximate cause of John's injury. *Leonardi*, 168 Ill. 2d at 94, citing *Caley v. Manicke*, 29 Ill. App. 2d 323, 328, 173 N.E.2d 209 (1961), *rev'd on other grounds*, 24 Ill. 2d 390, 182 N.E.2d 206 (1962). She had to prove a defendant's deviation from the standard of care was a cause of John's injury. The second paragraph of IPI Civil 3d No. 12.04 is another way of stating that burden. It is a reformulation of the plaintiff's task. Nothing in the IPI suggests the standard of care instructions (see IPI Civil 3d Nos. 105.01, 105.02) apply to anyone other than a defendant. The plaintiff is pursuing a cause of action against the defendant, not the other way around.

The word "conduct" was carefully chosen by the IPI committee. It declined to characterize the word, a commonsense judgment. There is no suggestion in the instruction or in the Notes on Use that the word "conduct" requires any definition.

At the risk of appearing casuistic, we suggest the proposition that an event cannot happen without a negligent cause defies logic. People get hurt. Sometimes a cause is negligence, or wilfulness, or design. Sometimes it is not any of these things. Nevertheless, the event takes place. People, doctors included, make judgments that, in hindsight, turn out to be mistaken. Those judgments might not be professionally negligent when made. Yet, injury resulted. See *Ramos v. Pankaj*, 203 Ill. App. 3d 504, 561 N.E.2d 744 (1990) (jury properly told it could find defendant's failure to discover infection neither aggravated nor caused the damage to plaintiff's hip); *Burge v. Morton*, 99 Ill. App. 3d 266, 425 N.E.2d 539 (1981) (proper to tell jury penicillin-resistant

bacterium and not defendant dentist's acts could be the sole proximate cause of plaintiff's infection).

We recognize *Freeman v. Petroff*, 288 Ill. App. 3d 145, 156, 680 N.E.2d 453 (1997), a fifth district case, refers to "the need to establish a standard of care and a deviation therefrom by a nonparty in order to determine whether there is an evidentiary basis to support giving the second paragraph of IPI Civil 3d No. 12.04."

No such suggestion is contained in *Ellig*, 237 Ill. App. 3d at 408: "[T]he jury could have reasonably found, based on the evidence presented, that someone else was the sole proximate cause of the baby's injuries."

In *Wojcik*, 299 Ill. App. 3d at 974, we said:

"[A] defendant has the right not only to rebut evidence tending to show that his acts are negligent and the proximate cause of claimed injuries, but he also has the right to endeavor to establish by competent evidence that the conduct of a third person is the sole proximate cause."

In *Wojcik*, two defense experts testified the failure of St. Anthony's Hospital, a nonparty, to discontinue the plaintiff's IV line was the sole proximate cause of her injury. Our examination of the record in that case reveals neither witness said the hospital's actions were professionally negligent or deviated from the appropriate standard of care. We held the evidence was sufficient to justify the sole proximate cause instruction.

■ We now hold the second paragraph of IPI Civil 3d No. 12.04 may be given the jury in a medical malpractice case even though no expert testifies the "conduct" of the third person nonparty was professionally negligent. Any such requirement would shift the burden of proof to the defendant. The "law in no way" does that. *Leonardi*, 168 Ill. 2d at 94. Of course, we do not suggest the sole proximate cause instruction is justified in all cases. There must be "some evidence" to support it. *Leonardi*, 168 Ill. 2d at 101.

■ Putting aside for a moment our conclusions concerning a nonparty's "conduct," we find there was sufficient evidence in this case from which the jury could have concluded Dr. Ahstrom was negligent.

Dr. Ahstrom was the only orthopedic surgeon on the case from November 16 to December 5, 1986. During that time, contrary to the views of every other doctor in the case, he resisted removal of the prosthesis and successfully urged family members to resist it. As of November 24, 1986, Dr. Ahstrom did not believe the prosthesis needed to be removed.

Dr. Marquardt, another of John's treating physicians, told the jury

he had no doubt that John "needed to be quickly taken to the operating room" for removal of the prosthesis: "This was the only alternative this gentleman had in hopes of recovering from what appeared to be a life-threatening condition."

Dr. Orth, who saw John on November 12, 1986, said he never heard of an orthopedist saying he would not remove a prosthesis when many of his colleagues tell him it has to come out or the patient is doomed. It was Dr. Orth's opinion as of November 12, 1986, to a reasonable medical certainty, that if the hip were not removed John was going to die.

Further, there were these questions and answers on cross-examination of Dr. Orth:

"DEFENSE COUNSEL: Now, doctor, if an orthopedic surgeon refuses to believe, such as in the case of Mr. McDonnell, that the prosthesis is the bleeding [sic] ground for the bacteria and, therefore, refuses to consider the opinions of the medicine [sic] people who are saying that the patient should be taken to surgery for removal of the prosthesis and that the patient was fit to undergo the surgery, that would be a departure from the standard of care, would it not?

DR. ORTH: Yes."

Dr. Gump was asked whether it was his opinion that Dr. Ahstrom "erred grievously" in not promptly removing that prosthetic hip. His answer: "I have indicated I thought that it could have been done sooner rather than later, yes."

And then:

"DEFENSE COUNSEL: And do you feel that Dr. [Ahstrom's] resistance to removal of the prosthesis made management of [John's] care an impossibility while he was on Dr. Ostrom's [sic] service; isn't that true?

DR. GUMP: Well, he was actually—yes, Dr. McPartlin's service. I think it made it more difficult for Dr. McPartlin, yes."

It is the nature and extent of all the evidence, not the use of formulaic words, that establish a nonparty's professional negligence. See *Dominguez v. St. John's Hospital*, 260 Ill. App. 3d 591, 595, 632 N.E.2d 16 (1994) (phrase "within a reasonable degree of medical certainty" is not required where expert's level of certainty is otherwise established by his testimony).

A jury does not have to hear the words "deviation from standard of care" before it decides a nonparty doctor's conduct was negligent. That would be an exercise of form over substance. Those words were not used by expert witnesses in *Wojcik*, 299 Ill. App. 3d at 975, when they testified the nonparty hospital's conduct was the sole proximate cause of the plaintiff's injury.

If this jury did find Dr. Ahstrom's negligence was the sole proximate cause of John's injury, its conclusion would be supported by the record.

### 2. Contributory Negligence and Mitigation of Damages

Moira contends the trial court erred by allowing evidence and jury instructions concerning John's refusal to undergo hip surgery to cure the infection. Moira also contends the trial court erred in allowing evidence and jury instructions concerning her and her daughter Nula's contributory negligence toward John. Because these issues present related questions, we address them together.

■ Under the Survival Act (see Ill. Rev. Stat. 1985, ch. 110½, par. 27—6 (now 755 ILCS 5/27—6 (West 1996))), the administrator of the decedent's estate seeks to recover for any statutory or common law claims the decedent accrued before his death. *Bryant v. Kroger Co.*, 212 Ill. App. 3d 335, 336-37, 570 N.E.2d 1209 (1991).

Under the Wrongful Death Act (see Ill. Rev. Stat. 1985, ch. 70, pars. 1 through 2 (now 740 ILCS 180/1 *et seq.* (West 1996))), the decedent's next of kin seek to recover their own pecuniary losses caused by the decedent's death. *Kessinger v. Grefco, Inc.*, 251 Ill. App. 3d 980, 982-83, 632 N.E.2d 946 (1993).

In the survival claim, the deceased's contributory negligence may reduce the estate's damages. It does not defeat the action. In the wrongful death claim, the contributory negligence of the deceased's next of kin can eliminate any damage recovery by that person, but it does not defeat the action. See *Biundo v. Christ Community Hospital*, 104 Ill. App. 3d 670, 674, 432 N.E.2d 1293 (1982) ("contributory negligence of next of kin under the Wrongful Death Act [citation] does not bar recovery but simply precludes such heir from recovery").

On the survival count, the court instructed the jury:

"As to the survival count a patient must exercise ordinary care to follow reasonable medical advice. A physician is not liable for the consequences of a patient's failure to do so. A patient's failure to use ordinary care in obtaining treatment or in following instructions does not absolve the negligence, it only absolves the physician from any damage caused by the patient's failure to exercise ordinary care to follow reasonable medical advice."

See IPI Civil 3d No. 105.08.

On the wrongful death count, the court instructed the jury:

"Under the wrongful death count it was the duty of [the] plaintiffs *** before and at the time of the occurrence to use ordinary care for the safety of [John]. The above plaintiffs are contributorily negligent if he or she failed to use ordinary care for

the safety of [John]. And the failure to use such ordinary care was the proximate cause of the death of [John].

The contributory negligence of any of the above plaintiff [*sic*] bars that individual or those individuals who contributed to cause the death of [John] from recovery for pecuniary damages under the wrongful death count.

However, that individual or those individuals who are not contributorily negligent may be awarded pecuniary damages to the extent they've been proven to have suffered by that individual or those individuals."

See IPI Civil 3d No. 10.03.

The court also instructed:

"If you find that [Moira] or [Nula] negligently contributed to cause the death of the decedent by failing to follow reasonable medical advice the conduct of that person or those persons does not bar recovery by the plaintiff. But in any award you may make you may not include damages for any pecuniary injury suffered by that person. The issue of contributory negligence does not apply to Ann Doherty [Ann] and Richard McDonnell [Richard]."

The court posed two special interrogatories to the jury: "[D]o you find that [Moira] failed to follow reasonable medical advice and that in doing so she was contributorily negligent[?]" and "[D]o you find that [Nula] failed to follow reasonable medical advice and in doing so she was contributorily negligent[?]"

The special interrogatories did not test the jury's general verdict (*Schultz v. Republic Insurance Co.*, 124 Ill. App. 3d 342, 346, 464 N.E.2d 767 (1984)), but the jury's answers provide us some insight into their verdict.

The jury found Moira was, but Nula was not, contributorily negligent. Thus, Moira's negligence meant she could not recover for her pecuniary injuries, and Nula's lack of negligence meant she could recover for her pecuniary injuries. Contributory negligence never was an issue for Ann and Richard. But none of the survivors recovered because the jury returned a general verdict for the defendants. Contributory negligence in this case relates to damages, not liability. *Fetzer v. Wood*, 211 Ill. App. 3d 70, 75, 569 N.E.2d 1237 (1991). Because the jury reached a verdict in favor of the defendants, it obviously did not address the issue of contributory negligence. *Fisher v. Slager*, 201 Ill. App. 3d 480, 489, 559 N.E.2d 118 (1990); *Cairns v. Hansen*, 170 Ill. App. 3d 505, 512, 524 N.E.2d 939 (1988); *Lebrecht v. Tuli*, 130 Ill. App. 3d 457, 476, 473 N.E.2d 1322 (1985).

Illinois law is clear: a plaintiff has no duty to mitigate his damages by submitting to serious or major surgery. *Hall v. Dumitru*, 250 Ill. App. 3d 759, 765, 620 N.E.2d 668 (1993); see *Lapidus v. Hahn*,

115 Ill. App. 3d 795, 450 N.E.2d 824 (1983); *Montgomery v. Terminal R.R. Ass'n*, 73 Ill. App. 3d 650, 392 N.E.2d 77 (1979); *Rosenstein v. Chicago Transit Authority*, 12 Ill. App. 3d 1089, 299 N.E.2d 376 (1973); *Howard v. Gulf, Mobile & Ohio R.R. Co.*, 13 Ill. App. 2d 482, 142 N.E.2d 825 (1957); see also IPI Civil 3d No. 33.01, Comment.

While John's hip surgery was certainly serious or major, the issue of whether John failed to mitigate damages by refusing this surgery is irrelevant to either the survival or wrongful death count. The jury found the defendants were not liable and thus did not reach the issue of damages.

> "Initially, before the jury reaches the question of damages, it must decide liability. Here, the jury returned a verdict in favor of defendants. It did not reach the damages issue; therefore the issue is not pertinent to the appeal." *Lebrecht*, 130 Ill. App. 3d at 476.

See *Karr v. Noel*, 212 Ill. App. 3d 575, 584, 571 N.E.2d 271 (1991); *Fisher*, 201 Ill. App. 3d at 489; *Cairns*, 170 Ill. App. 3d at 512.

■■ Moira contends, however, this mitigation of damages issue infected the jury's liability verdict. In *Hall*, the court did note, " 'there may be cases in which errors which go to the question of damages may be so pervasive and prejudicial as to create the likelihood that they may have affected a jury's decision on the issue of liability.' " *Hall*, 250 Ill. App. 3d at 766, quoting *Mulvey v. Illinois Bell Telephone Co.*, 53 Ill. 2d 591, 599-600, 294 N.E.2d 689 (1973). The court held evidence the plaintiff refused to undergo a serious operation prejudicially shifted the jury's attention away from the defendant's alleged medical malpractice. *Hall*, 250 Ill. App. 3d at 766.

We believe *Hall* stands alone among Illinois cases on this issue, and we refuse to assume jurors are so easily distracted. Evidence that John refused to undergo a dangerous operation was inadmissible to prove failure to mitigate damages. But this evidence affected only mitigation of damages. Any error admitting this evidence or instructing on it became harmless when the jury found for the defendants on liability.

CONCLUSION

This may not have been a perfect trial, but our review of the record persuades us the plaintiff received a fair trial, free from unfair prejudice or harmful error. Further, the trial court did not abuse its discretion when it denied the plaintiff's motion for new trial. We affirm the judgments entered on behalf of the defendants.

Affirmed.

SOUTH, P.J., and HOFFMAN, J., concur.