CARMEN JUAREZ *et al.*, Plaintiffs-Appellants, v. COMMONWEALTH MEDICAL ASSOCIATES *et al.*, Defendants-Appellees.

First District (3rd Division)   Nos. 1—99—4081, 1—00—1361 cons.

Opinion filed December 27, 2000.

Thomas A. Clancy and Jeanine L. Stevens, both of Clancy & Stevens, of Chicago, for appellants.

Mark J. Smith and Brian C. Rocca, both of Fedota Childers & Rocca, P.C., of Chicago, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

Two trials took place in this medical malpractice action filed by plaintiff Carmen Juarez. The first trial raises the question of a trial court's authority to act once it finds a lawyer intentionally brought about a mistrial.

Judge Ronald Banks entered an order declaring a mistrial on the second day of the first jury trial, finding plaintiff's attorney, Jeanine L. Stevens (Stevens), repeatedly violated evidentiary and procedural rules as well as the court's order *in limine*. Judge Banks sanctioned Stevens for the mistrial by ordering her to pay all attorney fees and costs incurred by the defense during the trial.

Judge Maureen Durkin Roy presided over the second jury trial, which resulted in a verdict in favor of defendants Commonwealth Medical Associates, S.C. (Commonwealth), Alam Khan, M.D. (Dr. Khan), Todd Grendon, M.D. (Dr. Grendon), and Joseph Car, M.D. (Dr. Car). Judge Durkin Roy denied plaintiff's subsequent motion for a new trial.

Stevens appeals the entry of sanctions against her. The following issues are raised in relation to Judge Banks' entry of the sanctions order: (1) whether Stevens violated the trial court's order *in limine*; (2) whether the trial court erred in imposing monetary sanctions on

Stevens in the form of payment of all opposing counsel's fees and costs accumulated during the first trial; and (3) whether defendant's bill for fees and costs should be stricken because it was inflated and failed to identify the person or entity entitled to payment.

Plaintiff appeals Judge Durkin Roy's denial of her motion for a new trial and raises the following issues: (1) whether the trial court erred in precluding plaintiff from asking potential jurors during *voir dire* if they would be able to award a specific amount of money if they found in plaintiff's favor; (2) whether the trial court erred in precluding plaintiff from introducing evidence relating to her health maintenance organization (HMO) enrollment; (3) whether the trial court erred in barring plaintiff from introducing any evidence or opinions relating to plaintiff's treatment prior to April 4, 1994; and (4) whether the trial court erred in allowing defendants to withdraw two of four Rule 213(g) (166 Ill. 2d R. 213(g)) expert witnesses.

We reverse Judge Banks' order requiring Stevens to pay sanctions, but affirm Judge Durkin Roy's denial of plaintiff's motion for a new trial.

FACTS

Defendants were affiliated with Commonwealth and, at various times, acted as plaintiff's primary care physician. Dr. Car was plaintiff's primary care physician through July 31, 1994, when he left Commonwealth. Dr. Khan acted as plaintiff's primary care doctor from that time until May 18, 1996, when Dr. Grendon began treating plaintiff.

Each of the doctors treated plaintiff several times for urological problems commonly associated with bladder infections. In 1992, while plaintiff was under Dr. Car's care, plaintiff was referred to Dr. Neil Friedman (Dr. Friedman), a urologist. Dr. Friedman performed a cytology (evaluation of urine for abnormal cells) in May 1992. This test showed abnormal cells were present. Three subsequent urine cytologies tested negative for abnormal cells.

Dr. Friedman tested plaintiff's urine again in October 1992 and found traces of blood. Though Dr. Friedman told Dr. Car he wanted to repeat urine cytology tests, do a bladder biopsy, and obtain a urine culture, Dr. Car referred plaintiff to a medical oncologist. Bladder cancer was ruled out as a diagnosis after several more cytologies showed negative results.

Plaintiff continued to have symptoms associated with bladder infections throughout the time Dr. Car acted as her primary care physician, but her symptoms resolved after she was given antibiotics. Dr. Khan and Dr. Grendon also treated plaintiff for urological

problems. Each time, plaintiff's symptoms resolved after she took antibiotics.

In January 1998, plaintiff found blood in her urine and was referred to Dr. Michael Young, a urologist, by Dr. Melinda Ring, another Commonwealth doctor. Dr. Young diagnosed plaintiff with bladder cancer in February 1998. Plaintiff's treatment included removal of her bladder and creation of a "neobladder" from tissue taken from plaintiff's intestines.

Plaintiff filed this suit on April 14, 1998, alleging defendants' failure to adequately diagnose and treat her bladder cancer resulted in a metastasis of the disease to surrounding lymph nodes and necessitated removal of her bladder. Because the four-year statute of repose for medical malpractice actions (735 ILCS 5/13—212 (West 1998)) prohibited any allegations of negligence before April 14, 1994, plaintiff's complaint did not include allegations that negligence occurred during Dr. Car's early treatment of plaintiff's urological problems.

DECISION

First Trial—Mistrial and Sanctions

The trial court revisited issues surrounding the statute of repose several times before the first trial. Dr. Car brought a motion for summary judgment in which he alleged the statute of repose barred plaintiff's suit against him. The trial court denied Dr. Car's motion and found plaintiff's allegations of negligence against him were confined to his treatment of plaintiff from April 14, 1994, until he left Commonwealth on July 31, 1994, and that the only conduct at issue in the case was that which occurred on or after April 14, 1994.

The issue was discussed again when the court ruled on the parties' motions *in limine.* Defendants asked the court to prohibit plaintiff from introducing any evidence concerning her medical treatment prior to April 1994. Defendants feared plaintiff would imply Dr. Car was negligent for failing to refer her to Dr. Friedman for more tests after the May 1992 cytology results were positive. Plaintiff claimed she had no intention of alleging any negligence occurred before April 14, 1994, but needed to be able to establish a factual chronology of her medical treatment.

Defendants also asked the trial court to bar any evidence of plaintiff's HMO enrollment. Plaintiff argued defendants' experts' deposition testimony placed the blame for any negligence on Dr. Friedman for failing to follow up on the May 1992 positive cytology results. Plaintiff asked the court to allow her to introduce the HMO evidence

to show Dr. Friedman could not have seen her without a referral from Dr. Car.

The trial court barred plaintiff from introducing any evidence of her HMO enrollment but ruled she would be allowed to introduce purely factual evidence relating to her pre-1994 medical treatment. Judge Banks advised Stevens she could not introduce any evidence of a deviation from the standard of care prior to April 14, 1994, and specifically told Stevens to avoid suggesting that Dr. Car was negligent for failing to refer plaintiff to Dr. Friedman for more testing.

Despite this warning, Stevens repeatedly implied Dr. Car was negligent in failing to authorize another referral to Dr. Friedman. Stevens also violated procedural and evidentiary rules during her opening argument and questioning of her first two witnesses. Judge Banks declared a mistrial during Stevens' direct examination of Dr. Friedman:

"Q. [In October of 1992] the patient was referred to you for one visit, correct?

[Defense counsel]: I object, your Honor.

THE COURT: Objection sustained. He was referred to the doctor period.

Q. Doctor, how many times did you see the patient in October of 1992?

\* \* \*

A. \*\*\* I saw her one time October of '92.

Q. Okay.

In October of 1992 what was the reason for the referral of the patient?

A. Chronic bladder infection.

Q. Were you authorized to do any procedures at that time?

[Defense counsel]: I object, your honor.

THE COURT: Objection sustained.

Ask him what procedures he did.

Q. He wasn't authorized to do any, your Honor.

[Defense counsel]: I object, your Honor.

THE COURT: We will have a side-bar right now.

THE COURT: I have been very tolerant. You are violating the rules left and right. You do it again. I listened to your questions. You are trying to violate the rules. You do violate the rules. I'm not only going to declare a mistrial. I'm going to sanction you. You will pay all costs of litigation up to this time for the defense. This case will be transferred back to the presiding judge. There will be a new trial.

I don't know what I could do, Counselor, every move you make you are in violation of the rules.

You are violating more rules than any lawyer I know. I'm sorry to have to say it, but I can't take it. I don't care if they want a mistrial. It's all over. You present a bill for your costs. She'll pay it.

[Plaintiff's counsel]: Thank you, your Honor.

[Defense counsel]: Thank you.

THE COURT: And I know you were trying to do it only [*sic*] purpose because you want a mistrial, so we will work on that too."

Stevens contends the trial court erred in declaring a mistrial. She says while the trial court's order *in limine* barred evidence of plaintiff's HMO enrollment, her question concerning "authorization" was not a violation of that order.

This argument misconstrues the basis for the mistrial. The trial court did not order a mistrial because plaintiff violated the order *in limine* prohibiting evidence of plaintiff's HMO membership. The court ordered the mistrial because it repeatedly sustained objections to Stevens' suggestions that Dr. Car deviated from the standard of care in 1992, repeatedly sustained objections to improper argument during her opening statement, sustained objections during her questioning of Dr. Bormes when she implied there was a family history of bladder cancer despite the trial court's order that she could not introduce this evidence, and sustained objections when counsel again implied that Dr. Car violated the standard of care prior to April 1994 during her direct examination of Dr. Bormes and Dr. Friedman.

■ The decision to grant a mistrial rests within the sound discretion of the trial court based upon the particular circumstances of the case. *Benuska v. Dahl*, 87 Ill. App. 3d 911, 913, 410 N.E.2d 249 (1980). The trial court's ruling will not be disturbed on appellate review absent a clear abuse of discretion. *Benuska*, 87 Ill. App. 3d at 913. Given Stevens' repeated violations of the court's order *in limine*, as well as her violation of procedural and evidentiary rules, we do not find the court's ruling to have been an abuse of discretion. But that does not end the matter.

Stevens also argues the trial court erred in ordering her to pay sanctions in the form of attorney fees and costs. We agree.

■ Absent an agreement between the parties or statutory authority, causing a mistrial does not give rise to liability for attorney fees. *Freeman v. Myers*, 191 Ill. App. 3d 223, 226, 547 N.E.2d 586 (1989). In *Freeman*, as in this case, the court's order *in limine* was continually violated by the attorney representing defendant. A mistrial was ordered based on the violations. Plaintiffs subsequently filed a motion for attorney fees and sanctions, as well as a rule to show cause why defendant's attorney should not be held in contempt. The trial court entered an order assessing attorney fees against defendant's attorney

but did not find him in contempt. The appellate court reversed the award of sanctions and said:

> "This is not a case of mistaken tactics. [Defendant's attorney], an experienced trial lawyer, was repeatedly warned by the court. When reprimanded, [defendant's attorney] stated the excluded evidence was the theory of defendant's case. The trial court was justified in finding [his] violation of the court order to be intentional. In such a situation the court may have been able to fashion appropriate relief based on contempt. However, there was no finding of contempt. Though a different remedy may have been appropriate, absent authority or agreement, the trial court's award of attorney fees in this case cannot stand." *Freeman*, 191 Ill. App. 3d at 227-28.

■ Here, there was no finding of contempt. Judge Banks entered the order authorizing sanctions at the same time he entered the order of mistrial. Defendants' attorneys never moved for sanctions or for a finding of contempt. When plaintiff appealed the sanctions, Judge Banks discussed his decision not to find Stevens in contempt:

> "I knew I had the power of law to hold [Stevens] in contempt of court. I would not do that and the reason I would not do that, I spent most of my life in criminal and I thought about it. I'll be very honest with you. I thought about holding her in contempt of court but I've always felt that when you're in direct contempt of court because of my criminal background that you should go to jail.
>
> And I didn't think that—I would have sent her if I had held her in contempt. I'm not saying that as a threat or anything but I decided that that was not the proper thing to do. I didn't want to send a lawyer to jail. I've never done it in my life.
>
> The second thing is that although the ARDC may have felt it reached the point of a hearing for a possible censure, suspense and disbarment, I did not. I felt that the penalty that I was going to issue would be sufficient as a wake-up call to Ms. Stevens.
>
> Ms. Stevens tried on the day of the mistrial to get her own mistrial. I did not grant her a mistrial on what she wanted a mistrial on. I told her not to force a mistrial."

Defendants contend the trial court's entry of sanctions was permissible under Supreme Court Rule 219(c). 166 Ill. 2d R. 219(c). Rule 219(c) allows the court to sanction attorneys who fail to comply with discovery orders. It does not give trial courts the authority to sanction attorneys who violate orders *in limine* during trial. Though we do not condone Stevens' conduct, the trial court had no authority for its entry of sanctions in the form of attorney fees and costs. *Freeman*, 191 Ill. App. 3d at 228; see also *Kilpatrick v. First Church of the Nazarene*, 182 Ill. App. 3d 461, 470-71, 538 N.E.2d 136 (1989) (existing statutes

and supreme court rules do not allow assessment of attorney expenses absent finding of contempt); *In re Marriage of Spizzo*, 168 Ill. App. 3d 487, 493, 522 N.E.2d 808 (1988) (absent finding of contempt, orders assessing attorney fees and costs against respondent and her attorney must be reversed).

We understand our conclusion in this case leaves a trial court little room, short of a contempt finding, to deal with a lawyer who purposely creates conditions for a mistrial. Whether trial judges should be granted the power to sanction a seriously misbehaving trial lawyer without first entering a contempt finding is a question this court does not have the authority to determine.

Because we find the trial court had no authority to order Stevens to pay defendants' attorney fees, we need not address her contention that the bill for fees submitted by the defense should be stricken.

Second Trial—Denial of Motion for a New Trial

The case was transferred to Judge Durkin Roy for a second trial. Judge Durkin Roy made many of the same rulings Judge Banks made on the parties' motions *in limine*. She denied plaintiff's motion requesting permission to enter evidence of HMO enrollment. She ruled factual evidence of plaintiff's medical history prior to April 14, 1994, was admissible, but warned plaintiff evidence of a deviation from the standard of care prior to 1994 would not be allowed.

Plaintiff again raised her concern defendants would attempt to show Dr. Friedman was responsible for failing to follow up on plaintiff's May 1992 test results. Defendants again said they would not attempt to suggest Dr. Friedman was in any way negligent. Judge Durkin Roy told the parties they would not be allowed to suggest any negligence occurred prior to April 14, 1994.

Judge Durkin Roy also denied plaintiff's request to ask potential jurors, during *voir dire*, whether they would be able to award plaintiff a specific amount of money if they found in her favor. The judge advised the parties that she generally asked potential jurors if they would be able to award a "substantial amount" of money and did not see any need to elaborate by naming a specific amount.

The jury returned a verdict in defendants' favor, and Judge Durkin Roy denied plaintiff's motion for a new trial.

■ Plaintiff first contends the trial court erred in denying her request to be allowed to ask potential jurors, during *voir dire*, whether they would be able to award $2 million if they found in her favor.

The trial judge has discretion in determining what questions to pose to the jury during *voir dire*, including whether potential jurors have fixed ideas about awards of specific sums of money. *DeYoung v.*

*Alpha Construction Co.*, 186 Ill. App. 3d 758, 764, 542 N.E.2d 859 (1989). Here, the trial court asked potential jurors whether they could award "substantial damages." We do not find the failure of the court to allow inquiry into a specific amount was an abuse of its discretion. *Kern v. Uregas Service of West Frankfort, Inc.*, 90 Ill. App. 3d 182, 201, 412 N.E.2d 1037 (1980) (trial court did not abuse its discretion where attorneys were allowed to ask jurors whether they had any prejudice against "large verdicts"). Furthermore, given that the jury returned a verdict in favor of defendants, any error committed by the trial court on this issue was harmless. See *McDonnell v. McPartlin*, 303 Ill. App. 3d 391, 402, 708 N.E.2d 412 (1999).

■ Plaintiff next contends the trial court erred in denying her motion *in limine* requesting she be allowed to introduce evidence concerning her HMO membership. Plaintiff claims she did not intend to introduce this evidence for purposes of establishing liability, but instead intended to use it to show the circumstances under which Dr. Car referred plaintiff to Dr. Friedman.

The admissibility of evidence is committed to the sound discretion of the circuit court. *Caponi v. Larry's 66*, 236 Ill. App. 3d 660, 674, 601 N.E.2d 1347 (1992). An evidentiary ruling will not be reversed absent an abuse of that discretion. *Poulos v. Lutheran Social Services of Illinois, Inc.*, 312 Ill. App. 3d 731, 745, 728 N.E.2d 547 (2000).

Plaintiff claims she needed to introduce evidence of HMO enrollment in order to "defend Dr. Friedman against Defendants' experts opinions that he was to blame for the delay in diagnosis of plaintiff's cancer and that he deviated from the accepted standard of care by failing to follow-up *** from 1992 until 1998." As discussed above, the trial court ruled defendants would not be allowed to imply Dr. Friedman was negligent in 1992. While defendants' experts suggested during their depositions that Dr. Friedman, rather than Dr. Car, was at fault for failing to follow up on the 1992 positive cytology, the trial court barred this testimony at trial. The jury never heard it. Plaintiff does not point us to any testimony in the trial transcript that supports her argument, and after reviewing the record, we do not find any.

■ Plaintiff also contends the trial court erred in prohibiting her from introducing facts and opinions that were not included in her medical chart concerning plaintiff's medical history prior to April 14, 1994. Plaintiff specifically claims the trial court erred in ruling she could not ask Dr. Friedman about his alleged May 1992 oral statement that a cytology test had a "false-positive" result.

The trial court's decision was based on its finding the statute of repose barred all evidence relating to any allegations of negligence prior to April 14, 1994. Nothing in the court's order prohibited plaintiff

from eliciting facts relating to plaintiff's treatment prior to April 14, 1994; the trial court simply said plaintiff could not attempt to prove any negligence occurred prior to that date.

Dr. Friedman's cross-examination testimony that the May 1992 cytology had a "false-positive" result was meant to explain why he did not diagnose plaintiff with cancer in 1992, though the cytology was positive. Dr. Friedman said after the following three cytologies were negative for abnormal cells, in his "clinical judgment," the May 1992 result was a "false-positive." Plaintiff was allowed to ask several follow-up questions concerning this testimony and was only prohibited from asking what "needed to be done" for plaintiff in light of the May 1992 cytology after the trial court determined the question violated the order *in limine*. We do not find any of the court's rulings on this issue to be an abuse of discretion.

■ Plaintiff contends Judge Durkin Roy erred in permitting defendants to withdraw two expert witnesses without notice. Plaintiff claims she should have been given an opportunity to cross-examine the experts concerning their withdrawn opinions that Dr. Friedman was responsible for the delay in plaintiff's diagnosis. Again, because these opinions were not elicited or discussed at trial, there was no need to allow plaintiff to cross-examine these experts on that subject.

CONCLUSION

For the reasons discussed above, we reverse Judge Banks' award of sanctions and affirm Judge Durkin Roy's denial of plaintiff's motion for a new trial.

Affirmed in part and reversed in part.

CERDA and BURKE, JJ., concur.